SUPREME COURT.    Saratoga General Term, May, 1854.    *Hand,*
        *Cady* and *Allen,* Justices.

SAFFORD, pl'ff in error *vs.* THE PEOPLE def'ts in error.

A writ of error, for the purpose of reviewing a final judgment of the court of
    Oyer and Terminer, is a writ of right and brings before the Supreme Court
    the bill of exceptions with the transcript of the record.
In all cases of felony, before the passing of sentence, the court should demand
    from the defendant what he has to say why judgment should not be pro-
    nounced against him: and the fact that the defendant was present and that
    such demand was made, ought to appear upon the record.
On an indictment under the "act to punish seduction as a crime" passed in
    1848, the defendant may show that the prosecutrix was not of "previous
    chaste character" either by proving an actual want of chastity on her part,
    or by showing her general bad reputation for chastity.    Per HAND, J. (*a*)
Where the illicit intercourse, between the prosecutrix and the defendant, began
    4 or 5 years before the finding of the indictment, and continued until within
    two years, it was held not to be a case of seduction within two years pre-
    vious to the finding of the indictment, and not to be within the statute.
Exceptions may now be taken on the trial of a criminal cause, in the same
    cases and manner provided by law in civil cases.
*It seems,* that the jury are no more judges of the law in criminal then in civil
    cases.(*b*)

Writ of error to the St. Lawrence Oyer and Terminer.    The
prisoner was indicted, tried, convicted and sentenced to the
state prison, under the " act to punish seduction as a crime."
(*Laws of* 1848, *ch.* 111.)    The indictment was found in Feb-
ruary, 1853; the prisoner arraigned in·June, 1853, and tried in
October, 1853—Mr. Justice Cady presiding.    The prosecuting
witness testified, that she and the prisoner had lived in the
same neighborhood from their childhood and were very intimate;
their parents residing near each other, and their brothers and
sisters having intermarried.    That the prisoner had sexual in-
tercourse with her first in June, 1851, before which he had paid
his addresses to her, and had promised to marry her.    That he
attempted to have connection with her four or five years before,

(*a*)  See The people *v.* Crozier, page 453.
(*b*)  See The People *v.* Finnegan, page 147.

but did not fully succeed; that he had tried many times before June, 1851, but only partially succeeded a few times. That she had a child by him, born in March, 1852. Her mother proved a promise of marriage by the prisoner. A witness for defendant testified, that four or five years before the trial, she saw the prisoner and prosecuting witness go into the bushes and lie down together, he laying his arm around her. Some other testimony was given, not material to the case before the court. The counsel for the prisoner, in summing up to the jury, insisted that, if the jury found from the evidence, that the first seduction was more than two years before this indictment was found, they should acquit, and asked the court so to charge; and that if prior to the sexual intercourse in June, 1851, the prose-cutrix was of unchaste character as to the defendant or any other person, he was entitled, as matter of law, to be acquitted, and asked the court to so charge. The district attorney contended, that " previous chaste character," in the statute, meant chaste character as to other persons than the defendant; and that prior unchastity, as to the prisoner, was no defence. That if he seduced her under a promise of marriage more than two years before the indictment, and had sexual intercourse with her afterwards under a promise of marriage, the several acts were continuous and a perpetuation of the same crime and he could not set up as a defence that he had perpetrated the same offences before the statute was passed, and that there was no evidence of a connection more than two years before finding the indictment. The court refused to charge on the point, whether an act of connection more than two years before finding the indictment could operate as a defence in law, but left the question to the jury, and the defendant excepted. The entry of judgment was as follows:

" St. Lawrence county Oyer and Terminer, October 18, 1853. *The People* v. *Hiram Safford*—Indictment for seduction.

The above named defendant having been heretofore (to wit, on the 21st day of June, 1853,) arraigned upon the above indictment, and having pleaded not guilty thereto, and having

been held to bail for his appearance at this court, and having been tried by a jury and found guilty; judgment having been moved by C. G. Myers, Esq., district attorney, court did on the 21st day of October, 1853, sentence the said defendant, Hiram Safford, to imprisonment in the Clinton state prison, at hard labor, for two years six months." (Signed by the clerk.)

*W. G. Paris,* for the prisoner.

*C. J. King,* for the people.

*By the Court.* HAND, J.—The objection that this cause is not properly before this court, is not valid. The court of Oyer and Terminer gave final judgment, and that being a court of record, a writ of error on the part of the defendant was a writ of right, and took up the bill of exceptions with the transcript of the record. (2 *R S.* 740, §15; 736, §21; *Regina* v. *Paty,* 2 *Salk.* 504.) The respective offices of writs of error and of certiorari, are quite well settled. (2 *Burr. Cr.* 193; 2 *Tidd,* 1051; 1 *id.* 330; *People* v. *Judges of Suffolk,* 24 *Wend.* 553; 5 *Hill,* 269; 3 *id.* 42; 1 *Ld. Raymond,* 469; *Chitt. Cr. L.* 747; 1 *Paine & Duer,* 84; 2 *R. S.* 736, § 27; *Barb. Cr. L.* 341.)

By the record, as certified to us, it does not appear that the court demanded of the defendant what he had to say why judgment should not be pronounced against him. This undoubtedly was necessary; and, it seems, it must appear by the record to have been done. (*King* v. *Spike,* 3 *Salk.* 358; *Rex* v. *Geary,* 2 *id.* 630; *Buncomb's Case,* 3 *Mod.* 263; 1 *Chitt. Cr. L.* 700; 4 *Bl.* 375; *Barb. Cr. L.* 330; and see *Plowd.* 387; *Rosc. Cr. Ev.* 245: *Rex* v. *Ratcliffe,* 1 *Wils,* 150; *King* v. *Garside,* 2 *A. & E.* 266; 2 *Toml. Dict.* 295.) This not appearing upon the record was one of the causes for which the attainder of Bascomb was reversed after his death. In one of our sister states, the court seems to have considered this practice applicable only to capital cases. (*West* v. *State,* 2 *New Jer.* 212.) And most of the cases above cited were upon convictions for treason, but the principle is the same; and the reason stated in all the books is,

that the prisoner may have a pardon to plead or he may move in arrest of judgment; and neither Chitty or Blackstone make any distinction. The former says, it is indispensably necessary even in clergyable felonies. The practice has its foundation in good sense and common justice, and the principle certainly applies to all cases of felony; and this crime seems to have been placed in that grade by our statute. (2 *R. S.* 702, § 30; *Carpenter* v. *Nixon*, 5 *Hill*, 260.) On conviction for misdemeanors, and especially when tried by courts of special jurisdiction, and in which there is no power to arrest judgment, perhaps the reason of the rule fails. It has been said that a copy of the indictment, bill of exceptions and judgment of the court only, need be returned. (*People* v. *Gray*, 25 *Wend.* 465; 2 *R. S.* 740, § 20; 758, §§ 5, 6.) The case of *The People* v. *Gray*, was reversed on another point, and I can not think that the entry of judgment is perfect in case of felony, unless it appear that the prisoner was present and had an opportunity to be heard against being sentenced. In this case, it does not appear that he was present during the term at which he was tried. The omission was probably from mere inadvertence in making the entry; and as the record is not removed, perhaps the court below has the power to amend, though that is not clear. (1 *Chitt. Cr. L.* 753; 2 *Salk.* 632.)

But I think some of the objections at the trial were well taken The defendant requested the court to charge the jury, that if the first seduction (or connection) was more than two years before indictment found, they should acquit; and that if prior to June, 1851, the prosecutrix " was of unchaste character as to the defendant or any other person, he was entitled as matter of law" to be acquitted. The court declined to charge upon the point whether a connection between the prosecutrix and defendant more than two years before the indictment, was a defence, but left the question to the jury.

Several things are necessary to convict under this act. (*Laws of* 1848, *ch.* 111.) There must be a promise of marriage, seduction of and illicit connection with an unmarried female, who must have been of " previous chaste character," and the indict-

ment must be found within two years after the commission of the offence; and the prosecution can not be sustained by the testimony of the female seduced, unsupported by other evidence.

In this case, the promise of marriage was proved, and proof was given tending to show carnal connection of the parties four or five years before the trial. But I find no evidence of the seduction or illicit connection within two years before the indictment, except that of the prosecuting witness. The statute does not say there must be two witnesses, as required in case of treason. But the facts constituting the crime can not be proved by the seduced alone; she must be supported by direct evidence, or proof of circumstances, on all the material allegations of the indictment. However, no point seems to have been taken on the trial on this branch of the case. But she must also have been " of previous chaste character." In a case arising upon another statute, " an act to punish abduction as a crime," (*Laws of* 1848, *ch.* 105,) it was said to " mean actual personal virtue; that the female must be actually chaste and pure in conduct and principle up to the time of the commission of the offence." (*Carpenter* · v. *People*, 8 *Barb.* 608; *Welles, P..J.*)

The word " character" has been variously used in legal proceedings; and sometimes denotes the personal, official or special character in which a party sues, or is sued, as executor, officer, &c., but it more frequently refers to reputation or common report. (1 *Cow. & Hill's Notes,* 460; 1, 768, *and cases there cited; Leddy* v. *Toucey,* 2 *Wend.* 352; *King* v. *Root,* 4 *id* 113.) And is seldom used as synonymous with mere inclination or propensity, or even secret habit, nor as descriptive of the mere qualities of individuals, only so far as others have formed opinions from their conduct. And by the addition of this word, it would seem the legislature intended something more than mere impurity of mind; otherwise the requirement would have been simply that the female should be " previously chaste." But the act does not say previous general chaste character. This is a penal statute, creating a new offence, and the accused

is not confined to general reputation. I am not prepared to say that one secret, solitary act of illicit intercourse, no matter how long previous, nor under what circumstances, would be such conclusive proof of unchaste character, as to prevent her being the subject of seduction under the statute, although it would render the female impure, and to a degree unchaste and immoral in fact. But repetition of the offence with different persons must, necessarily, more or less, establish a character for lewdness with some portion of the community; and that is enough for the defence, especially as she would be unchaste in fact. And the result would be the same if such intercourse was with an individual, and the fact was known to others or believed by them. So that, if the accused is not confined to general reputation, practically, the rule as above suggested and that laid down in *Carpenter* v. *People,* would probably require the same proof and produce the same result.

But I think the defence is not confined to cases of actual incontinency, but may prevail upon the ground of reputation alone, and that if the jury find the female really had the reputation of being unchaste, the case is not within the statute. The use of the word " character," is important in this respect, and in such case she does not come within the class described in the act, although illicit intercourse, in fact, can not be proved. However, notwithstanding the phraseology of the law, if the defence relies upon her bad reputation alone, to prevent abuse, it is no more than reasonable that the proof should show prior *general* bad character for chastity, or at least considerable notoriety.

If the illicit intercourse began four or five years before the indictment and had continued until within two years, the jury should have found for the defendant, on the question of seduction within two years. It would be rather a loose construction of the statute, to hold, that a woman who had continued in the practice of fornication with a man for four or five years, and up to the time she prosecutes, had been *seduced* within the last two years. The counsel for the prosecution, on the trial, seems to have supposed the commission of the crime

might be charged, as it were, with a *continuance* for several years, or that each occasion was a first seduction.　A nuisance may be stated as continuing, it seems.　(*Arch. Cr. Pl.* 36.) And in *crim. con.*, the injury may be stated to have been committed on divers days and times.　But seduction and the act of illicit intercourse, under certain circumstances, complete the crime, and such a construction is hardly within the spirit of the act, which was not intended to punish illicit cohabitation, but the seduction of a virtuous female under a promise of marriage.

Proof was adduced to show intercourse four or five years before trial, and from the testimony of the principal witness, it is to be feared there was very little reformation afterwards. The conduct of the defendant may have been, and probably was, cruel and dishonorable, but he must be legally convicted before he can be punished.

The defendant, though a different practice formerly prevailed, (2 *Russ. on Cr.* 725, § 6; *ex parte Barker*, 7 *Cow.* 143; and see *People* v. *Comstock*, 8 *Wend.* 549,) now may take exceptions, " in the same cases and manner provided by law in civil cases," (2 *R. S.* 736, § 21,) and the better opinion seems to be, that the jury are no more judges of the law in criminal than in civil cases, except that a verdict of acquittal is conclusive. (*Whart. Cr. Tr.* 886, 893, *and cases there cited; People* v. *Pine*, 2 *Barb.* 566; *Carpenter* v. *People, supra; Cow. & Hill's Notes*, 150, § 1.) However this may be, when requested, the judge should instruct the jury upon a question of law fairly arising in the case. (*People* v. *Gray*, 5 *Wend.* 289; *Vallance* v. *King*, 3 *Barb.* 548; 1 *Burr. Pr.* 456.)　The judgment should be reversed.

The judgment was reversed, and the prisoner ordered to be discharged.