[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 205 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 206 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 207 
The prisoner was indicted under the Statute of 1848, "to punish seduction as a crime." (Laws of 1848, chap. 111.) A number of exceptions were taken on the trial, and to the charge of the court, some of which are clearly frivolous; while others, and especially those involving a construction of the statute, require some consideration.
1st. The defendant offered to prove on the trial that the character for chastity of the witness and prosecutrix was, by general reputation among her neighbors, bad. This was excluded, and I think properly. Evidence that a female is by reputation unchaste, is not competent by way of impeachment. Indeed, a witness cannot be impeached by proof of any specific immorality. It must rest on general moral character, or character for truth. (Bakeman v. Row, 18 Wend., 146, and cases cited.) Nor can "character," as the term is used in the statute under which the prisoner was convicted, be proved by reputation. The statute is: "Any man who shall, under promise of marriage, seduce, and have illicit connection with any unmarried female, of previous chastecharacter, shall be guilty of a misdemeanor," c. Character, as here used, means actual personal virtue, and not reputation. The female must be unmarried and chaste in fact, when seduced. By the terms "chaste character," the legislature could only have meant personal qualities that make up the real character, and not public *Page 208 
reputation, which is the estimate of character formed by the public. It could not have been intended to substitute reputation for character in this, its primary and true sense. The accused may, by proof of specific acts of lewdness, on the part of the female, and not otherwise, show that she was in fact unchaste.
2d. The judge charged the jury that if they were fully satisfied from the evidence that the defendant promised to marry the prosecutrix, if she would have carnal connection with him, and she believing and confiding in such promise, and intending on her part to accept such offer of marriage, did have such carnal connection, it is a sufficient promise of marriage under the statute. This seems to me unobjectionable. It is not necessary that the promise should be a valid and binding one between the parties. The offence consists in seducing and having illicit connection with an unmarried female, under promise of marriage. It is enough that a promise is made which is a consideration for or inducement to the intercourse. But if the statute required the promise to be a valid one, the charge was correct. A mutual promise, on the part of the female seduced, is implied if she yields to the solicitations of the seducer, made under his promise to marry. As nothing appeared to the contrary in the case, the defendant is to be regarded as of full age, so far as that may affect his promise. All that is necessary to make any contract is, that the minds of both contracting parties should meet upon the subject matter. The charges implies such mutual assent.
3d. The statute provides "that no conviction shall be had on the testimony of the female seduced, unsupported by other evidence." It was claimed by the defendant's counsel that no conviction could be had unless the prosecutrix was supported by other evidence, not only as to the promise and illicit intercourse, but also as to the facts of her being unmarried, and her previous chaste character. The judge, however, in substance, instructed the jury that no corroboration or support was necessary as to her being unmarried, or as to her chastity. On the point of her being "unmarried" she was abundantly *Page 209 
supported by other evidence; but as to her previous chastity, there was no affirmative testimony, as there could not well be, except her own. But the judge was right in his construction of the statute. It does not contemplate that the female shall be supported or corroborated upon every material fact alleged. It is enough if the support extends to those facts which go to prove the offence charged. No corroboration or support is necessary to the points which merely indicate the person to be protected by the statute, viz.: that she was an unmarried female and of previous chaste character. It was only necessary that she should be supported by direct evidence or proof of circumstances, as to the facts constituting the crime. These were the promise and the intercourse.
4th. The defendant offered to prove, from general reputation among the neighbors, that the house of the mother of the prosecutrix, with whom the latter lived, was a house of ill-fame. This evidence was clearly incompetent. The character of the house could not be shown by general reputation. That a house is disorderly, is to be proven by particular facts. (1 Russell on Crimes, 825.) The general rule is, that hearsay evidence is incompetent to establish any specific fact which is, in its nature, susceptible of being proved by the witnesses who speak from their own knowledge. In this case, if it were at all material to show that the house kept by Mrs. ____, was a disorderly one, the fact was susceptible of better proof than hearsay, such as the harboring of persons of unchaste character, and permitting it to be a common resort of disorderly persons. Besides, the offered evidence was irrelevant. Evidence that Mrs. ____'s house was a disorderly one would not necessarily affect the character of the prosecutrix for chastity, as she was a minor, residing with her mother.
These are the only exceptions that need be noticed; and I think none of them were well taken.
The judgment should be affirmed.
DENIO, Ch. J., DAVIES, SELDEN, EMOTT, ROSEKRANS and MARVIN, Js., concurred. *Page 210 
BALCOM, J., delivered an opinion for affirming the judgment of the Supreme Court, but for other and different reasons, on some points, than those assigned by Judge WRIGHT. He concurred with Judge WRIGHT that the phrase "unmarried female of previous chaste character" as used in the act under which the prisoner was convicted, means one who has not lost her virtue by illicit intercourse with the other sex; and that she must be regarded as having a "chaste character" within the meaning of such act, if she has not been defiled by illicit connection with a man, though her reputation for chastity be bad. He was of the opinion the offer of the prisoner to prove that the reputation of the prosecutrix for chastity was bad, was in the present tense, and not one to show it was bad prior to her illicit connection with the prisoner, and that for this reason it was properly rejected, but said if the offer was to be regarded as one to prove the reputation of the prosecutrix for chastity bad previous to her connection with the prisoner, it was improperly rejected; and his reasons for this conclusion were as follows: "On the trial of a person charged with the crime of rape, or an assault with an intent, c., the general character of the prosecutrix, as a common prostitute may be shown. (The People v. Abbott, 19 Wend., 192.) This evidence is admitted in such a case, to create the probability that the prosecutrix consented to the carnal connection instead of being forced to submit to it; and the courts assume, by the reception of such evidence, that it tends to prove the prosecutrix was, in fact, a prostitute at the time of the commission of the acts alleged to have been a rape, or an assault with an intent to commit one. Now if it is competent, in such a case to establish by proof of reputation, that the prosecutrix was a prostitute at the time she claims to have been ravished or assaulted with intent, c., why is it not proper to show by reputation the want of personal virtue in the prosecutrix, in a case like this, previous to her connection with the prisoner? In other words, why does not evidence of the reputation of the prosecutrix for lewdness prior to her connection with the prisoner, tend to show she had then actually lost her virtue? I am of *Page 211 
the opinion it does; and that such evidence is admissible in a case like this, though not conclusive, by reason of the peculiar situation of the prosecutrix, and because it is almost impossible to establish want of chastity in the prosecutrix by proof of specific acts of lewdness. I think much less injustice would be done by the admission of such evidence, in a case like this, than by its rejection; and that it should be received on the ground that the case furnishes an exception to the general rule, that facts cannot be established by hearsay evidence."
Judge B. further said, "the prisoner's counsel insisted upon the trial and in the Supreme Court, and has argued here that the word `man' as used in the statute referred to, means a male person twenty-one years of age. This is too technical and limited a meaning to be applied to the word, in the connection wherein it is used. It has a broader and more comprehensive signification. The apparent spirit of the act, and the mischief or vice aimed at by the legislature, clearly show that the word `man,' as used in this statute, means a male person who has arrived at the age of puberty, or is capable of committing a rape. Rape is usually defined to be the carnal knowledge of a woman by a man,
forcibly and unlawfully against her will; and by the term `man' in this definition is meant a male of the human species of the age of fourteen years and upwards." (2 Bouv. Law Dic., 420.)
Judge B. was of the opinion that the evidence clearly showed that the prosecutrix was corroborated, or in the language of the statute "supported" on the following points: 1. As to her being chaste previous to her intercourse with the prisoner. 2. As to the prisoner promising to marry her. 3. As to his seducing her and having illicit connection with her under such promise. 4. As to the prosecutrix being unmarried. Judge B. concurred with Judge WRIGHT in the conclusion that it was unnecessary for the district attorney to prove there was a valid contract of marriage between the prosecutrix and prisoner prior to the illicit connection, and said, among other things, that before the statute could be construed, as contended for by the prisoner's counsel, it should *Page 212 
read that any man who shall, under contract of marriage, seduce,c., and not any man who shall, under "promise" of marriage, seduce, c., as it now is.
He also said the question put to the prosecutrix, as to what influence the promise of the prisoner to marry her had upon her mind by way of inducing her to consent to have sexual intercourse with him, was proper. Questions as to what influence representations of the prisoner have had upon the mind of the prosecutor, have generally been allowed in cases where their effect was a material point to be determined (People v.Haynes, 11 Wend., 557; People v. Miller, 2 Parker's Cr. R., 197); and it is now settled that witnesses may, in certain cases, testify what their undisclosed intentions were in transactions. An assignor may testify whether he intended to hinder, delay or defraud his creditors in making an assignment. (Seymour v.Wilson, 4 Kern., 567; Pope v. Hart, 35 Barb., 630.) And there is no difference in principle between permitting a witness to testify what his undisclosed intentions were, or whether he had a particular one, in doing a specified act, and allowing him to state the undisclosed effect that a certain representation or promise had upon his conduct.
It requires no discussion to show that it was proper for the district attorney to prove that the prosecutrix became pregnant by her illicit connection with the prisoner; and when the child was born; and that she had never had sexual intercourse with any person except the prisoner, and had never received the addresses of any other person as a suitor.
There is no other question in the case worthy of notice. It follows, that the prisoner was lawfully convicted, and that the judgment of the Supreme Court should be affirmed.
Judgment affirmed. *Page 213