## CALLAHAN *v.* THE STATE.

CRIMINAL LAW.—*Seduction.*—*Indictment.*—"*Promise of Marriage.*"—It is sufficient, in an indictment for seduction, to charge the defendant with having accomplished the seduction of the prosecutrix, "by means of a promise of marriage" previously made to her.

SAME.—*Condition of Promise.*—A " promise of marriage " by means of which
a seduction is accomplished, made by the defendant, to the prosecutrix, on
condition that she will consent to the act of sexual intercourse, is a
" promise of marriage" within the meaning of section 15, 2. R. S. 1876,
p. 431. defining the crime of seduction.

SAME.—*Promise by Married Man.*—The seduction of an unmarried female,
"under promise of marriage, " by a man whom she knows to be already
married and living with his wife, does not come within said section 15.

From the LaGrange Circuit Court.

*A. A. Chapin* and *J. D. Ferrall*, for appellant.

*T. W. Woollen*, Attorney General, for the State.

WORDEN, J.—An indictment was found against the appellant for seduction, the charging part of which was as follows : " That Edmon Callahan, on the 18th day of November, A. D. 1877, at said county, feloniously had illicit intercourse with, and carnal knowledge of, Olive Crampton, a female of good repute for chastity and under the age of twenty-one years, by means of a promise of marriage to her previously made by the said Edmon Callahan."

The sufficiency of the indictment was tested by motions to quash and in arrest of judgment. Plea, not guilty; trial and conviction.

The indictment was based upon the following statutory provision :

" Any person who, under promise of marriage, shall have illicit carnal intercourse with any female of good repute for chastity, under the age of twenty-one years, shall be deemed guilty of seduction, and, upon conviction, shall be imprisoned in the state-prison for not less than one, nor more than three years, and fined, not exceeding five hundred dollars, or be imprisoned in the county jail not exceeding six months ; but in such case the evidence of the female must be corroborated to the extent required, as to the principal witness, in cases of perjury." 2 R. S. 1876, p. 431, sec. 15.

It will be seen by the statute, that, in order to constitute

the offence, the intercourse must be had "under promise of marriage," while the indictment charges that it was had "by means of a promise of marriage." It is objected that the indictment is bad in consequence of this departure from the language of the statute.

But we are of opinion that the language of the statute, and that employed in the indictment, signify substantially the same thing. It was so held in the case of *Stinehouse* v. *The State*, 47 Ind. 17. The evident purpose of the statute was to make it a penal offence to have illicit carnal intercourse with a female of the description mentioned, where she is induced to consent thereto, and her consent is obtained, by or through the means of, a promise of marriage. The departure in the indictment from the language of the statute is not material. The exact language of the statute need not have been employed. 2. R. S. 1876, p. 385, sec. 59.

The indictment was good.

The appellant asked several instructions, which were refused by the court, and which need not, for the purpose of understanding the points made, be here set out at large. They were based upon two leading ideas : first, that the promise of marriage, in order to bring the appellant within the statute, must have been legal, valid and binding upon him, as matter of contract; and, second, that if the promise was made on the condition that the prosecutrix would consent to the sexual intercourse, the promise was *turpis contractus*, and void on general principles of law ; and that, if such was the character of the promise, the case does not come within the statute.

It is said by Bishop, in speaking of the New York statute, which is very similar, though in some respects dissimilar, to our own, that "it has been held, that, as an element in the offence, an apparently valid promise of marriage between the seducer and the seduced is neces-

sary; therefore, where the man is married, living with his wife, and the woman knows it, his act of seduction is not within the statute. If she were ignorant of his subsisting marriage, the consequence would be otherwise; because the promise then would be binding on him, to the extent of enabling her to maintain against him her civil suit for its breach. Moreover, he need not be of age; it is sufficient if he has arrived at puberty. If the marriage promise is made at the time when she yields to him, and not before, and is the inducement for her yielding, the case is still within the statutory provision." Bishop on Statutory Crimes, sec. 639.

We can very well understand, that, if the man making the promise was a married man, living with his wife, and the woman claimed to have been seduced knew that fact, the case could not come within the statute; because, in such case, the sexual intercourse could not, with any propriety, be said to have been had under, or by means of, the promise of marriage. In such case the promise of marriage, which the woman must know could not be fulfilled, could be no inducement to her consent to the intercourse.

But we are not prepared to say, that, in all cases there must be a valid, or apparently valid, and binding promise of marriage; one on which the promisee could maintain an action, in order to make out a case of seduction within the statute.

In the case before us there was nothing shown to invalidate the promise, unless it be that it was made upon the condition that the prosecutrix would consent to the intercourse, which the evidence tended to show. If this rendered the promise of marriage invalid, as involving moral turpitude, and if the invalidity of the promise on that ground took the case out of the operation of the statute, then the charges asked ought to have been given; otherwise, not. But both of these propositions must be main-

tained, in order to establish error in the refusal of the charges.

Was the appellant's promise of marriage void on account of having been made upon the condition that the promisee would consent to the sexual intercourse? This is a question which, for the purposes of the case, we deem it unnecessary to decide. But a reference to such authority upon it as has come under our notice may not be out of place.

It is said, in 2 Chitty Contracts, 11th Am. ed., p. 794, in speaking of contracts to marry, that, " if the promise was made by the defendant, in consideration that the plaintiff would have connection with him, it is void; but, it seems, that if he renewed the promise after the illicit intercourse had taken place, the subsequent promise would be binding."

The authorities upon the point, referred to in a note, are *Morton* v. *Fenn*, 3 Doug. 211, and *Hotchkins* v. *Hodge*, 38 Barb. 117.

The case from Douglas does not, as it seems to us, support the text. The case was tried before LORD MANSFIELD, and the evidence was, the action being for breach of promise of marriage, that the defendant promised to marry the plaintiff if she would go to bed to him that night, which she did, and lived afterward with him a considerable time. It appears, also, that the defendant several times afterward repeated his resolution to marry her, but that he afterward married another woman. The plaintiff had a verdict for two thousand pounds.

A rule *nisi* for a new trial having been obtained on the ground that it was *turpis contractus*, being on condition of plaintiff going to bed with the defendant, LORD MANSFIELD said : " I thought the objection would not lie on two grounds: 1. That before the marriage act this would have been a good marriage, and the children legitimate by the

rules of the common law; 2. I thought so because the parties were not *in pari delicto*, but this was a cheat on the part of the man."

ERSKINE showed cause, urging that " It is absurd, that where the defendant has been guilty of no crime he shall be liable to an action, but that where he has been guilty of the grossest seduction he shall go free. In the present case, moreover, there were subsequent promises made in consideration of the defendant's good opinion of the plaintiff, which are not affected by the consideration of the first promise, even supposing that to be base."

WALLACE and BALDWIN, *contra*, insisted, that the contract was void, and that the damages were so enormously excessive as to show partiality in the jury, and improper influence.

The Court of King's Bench decided nothing, but took time to consider, and in the meanwhile recommended that the parties agree that the defendant should pay the plaintiff five hundred pounds, which was done, and thus ended the case.

If the case decides any thing on the point under consideration, it is, as expressed in the opinion of MANSFIELD, that the objection would not lie, " because the parties were not *in pari delicto*, but this was a cheat on the part of the man."

The case referred to in Barbour holds, that a contract to marry, made after seduction and in consequence thereof, is valid, and not liable to the objection that it encourages immorality; because the wrong has been already perpetrated. Perhaps the inference to be drawn from the case is, that a promise to marry, made on the condition that the promisee would consent to sexual intercourse, would have been regarded by the court as void.

But, as before intimated, we do not pass upon this ques-

tion, inasmuch as, in our opinion, if it be conceded that the appellant's promise was void, as being conditioned upon the consent of the prosecutrix to the intercourse, the case still comes within the letter and spirit of the statute.

There is nothing in the statute that requires the promise of marriage to be free from all legal objections, viewed as the foundation of an action for its breach. Its purpose was to prevent the obtaining of the female's consent to sexual intercourse, by means of a promise of marriage; to protect her from the arts of designing and unprincipled men, in whom she may repose trust and confidence, and to whose solicitations she may yield, believing that their promises of marriage are made in good faith, and will be fulfilled. It is not to be supposed that she will pause to consider, even if she were capable of judging, whether the promise is valid in law, and one on which she could maintain an action if broken. It is not to be assumed in such case, that her consent to the intercourse is given in consequence of her reliance upon an action upon the promise, for damages, in case of its breach; but it may be given upon the confidence she places in the good faith of the promise, believing, not that it will be broken, but fulfilled. We are supported in these views by the decisions of the Court of Appeals of New York.

In the case of *Kenyon* v. *The People*, 26 N. Y. 203, which was a prosecution for seduction, the court said, "The judge charged the jury that if they were fully satisfied from the evidence that the defendant promised to marry the prosecutrix, if she would have carnal connection with him, and she believing and confiding in such promise, and intending on her part to accept such offer of marriage, did have such carnal connection, it is a sufficient promise of marriage under the statute. This seems to me unobjectionable. It is not necessary that the promise should be a valid and binding one between the parties.

The offence consists in seducing and having illicit connection with an unmarried female, under promise of marriage. It is enough that a promise is made which is a consideration for or inducement to the intercourse. But if the statute required the promise to be a valid one, the charge was correct. A mutual promise, on the part of the female seduced, is implied if she yields to the solicitations of the seducer, made under his promise to marry." See, also, *Boyce* v. *The People,* 55 N. Y. 644.

We are of opinion, for these reasons, that no error was committed in refusing the charges.

We may observe that the charges given by the court very fairly placed the law of the case before the jury, even if some of them were not more favorable to the defendant than he could legally claim.

We have carefully read the evidence, and feel clear that we should not disturb the finding of the jury.

The evidence is entirely too long to be set out in this opinion. That offered by the State clearly made out the case, and, in our opinion, the prosecuting witness, Olive Crampton, was corroborated to the extent required by the statute There was, to be sure, a conflict in the evidence. The defendant swore that he not only never promised to marry the prosecuting witness, but that he never had connection with her. But it was for the jury to determine what witnesses were most entitled to credence.

We find no error in the record.

The judgment below is affirmed, with costs.