## PEOPLE v. WEINSTOCK.

### (City Magistrate's Court of New York City.   March 2, 1912.)

1. SEDUCTION (§ 30*)—STATUTORY PROVISIONS.

   Although Penal Law (Consol. Laws 1909, c. 40) § 2175, providing that a person seducing and having sexual intercourse with an unmarried female of previous chaste character shall be punished as therein provided, is penal in character, and creates an offense not criminal at common law, it cannot be strictly construed in view of section 21, providing that the rule of strict construction shall not apply to that law, but that its provisions must be construed according to the fair import of their terms to promote justice and effect the objects of the law.

   [Ed. Note.—For other cases, see Seduction, Dec. Dig. § 30.*]

2. SEDUCTION (§ 32*)—ACTS CONSTITUTING—"CHASTE" CHARACTER.

   Under Penal Law (Consol. Laws 1909, c. 40) § 2175, making the seduction of an unmarried female of previous chaste character under promise of marriage a criminal offense, virginity is not required, but a widow, divorced woman, or even a woman guilty of unchaste conduct but who has reformed, may be "chaste."

   [Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 54½–55½; Dec. Dig. § 32.*

   For other definitions, see Words and Phrases, vol. 2, p. 1092.]

3. SEDUCTION (§ 32*)—ACTS CONSTITUTING—"CHASTITY."

   "Chastity" on the part of a woman seduced means actual personal virtue and character, and not a mere external reputation for chastity.

   [Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 54½–55½; Dec. Dig. § 32.*

   For other definitions, see Words and Phrases, vol. 2, pp. 1092, 1093.]

4. SEDUCTION (§ 39*)—EVIDENCE—BURDEN OF PROOF.

   On trials for seduction, the prosecution must prove the female's previous chaste character as a part of its case.

   [Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 67–71; Dec. Dig. § 39.*]

5. SEDUCTION (§ 32*)—ACTS CONSTITUTING—"UNMARRIED"—"FEMALE."

   Under Penal Law (Consol. Laws 1909, c. 40) § 2175, making the seduction of an unmarried female a criminal offense, an "unmarried" female is not necessarily one never married, but includes widows and divorced women, especially in view of the use of the comprehensive word "female," which is generic in its meaning, including all unmarried women, whether spinsters, widows, or divorcees.

   [Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 54½–55½; Dec. Dig. § 32.*

   For other definitions, see Words and Phrases, vol. 3, pp. 2744, 2745; vol. 8, pp. 7196, 7197.]

6. STATUTES (§ 188*)—CONSTRUCTION—MEANING OF WORDS.

   The words of a statute are to be taken in their ordinary and familiar sense.

   [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276; Dec. Dig. § 188.*]

7. STATUTES (§ 188*)—CONSTRUCTION.

   Where the words of a statute are clear, the courts cannot speculate upon the legislative intention, construe the act upon their own notions of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

what should have been enacted, or correct what they deem excesses or omissions.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276; Dec. Dig. § 188.*]

8. STATUTES (§ 241*)—CONSTRUCTION—PENAL STATUTES.

Penal statutes must be strictly construed and cannot be extended to embrace things not within their words.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322, 323; Dec. Dig. § 241.*]

9. SEDUCTION (§§ 39, 45*)—EVIDENCE—BURDEN OF PROOF.

On trials for seduction the prosecution must prove that the female seduced was unmarried, but may show this by facts and circumstances.

[Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 67–71, 80–82; Dec. Dig. §§ 39, 45.*]

10. SEDUCTION (§ 45*)—EVIDENCE—SUFFICIENCY.

On an examination for seducing a previously married woman, proof that her husband had been absent and not heard from for over seven years was insufficient to show that she was unmarried, especially where he went away with another woman.

[Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 80–82; Dec. Dig. § 45.*]

11. SEDUCTION (§ 34*)—PROMISE OF MARRIAGE.

A promise by defendant to marry when his daughter married would not support a prosecution for seduction under promise of marriage, since the promise must be absolute, and, while the time need not be definitely fixed, it must not be dependent on a contingency which may never happen.

[Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 58–60; Dec. Dig. § 34.*]

Mandel Weinstock was charged with seduction under promise of marriage. On preliminary examination. Complaint dismissed.

J. Ward Follette, Deputy Asst. Dist. Atty., of New York City (Harry Greenberg, of New York City, of counsel), for the People.

Simon Rasch, of New York City (Abraham Levy, of New York City, of counsel), for defendant.

FRESCHI, City Magistrate. In the year 1901, the complainant, who had come to America shortly before that time, married one Henry Kronenberg, in Brooklyn, N. Y., where she lived with him for a period of one year. Soon thereafter he deserted her, and ever since his whereabouts have been, and still are, unknown. The complainant has never heard from him or about him, and she does not now know whether he be living or dead. The real cause of their separation is not clearly established. The complainant testified that there was no quarrel, warning, or notice leading up to it, or any reason for her husband abandoning her; but she added, further, that she had heard he went away with another woman whose name is unknown to her. Efforts by the prosecutrix to locate him have been unavailing. Proof of the nature and extent of her efforts to find or place him, or what, if any, means or methods have been employed by her, or others on her behalf, to ascertain whether her husband is or is not still alive, is not

furnished; and I am asked to rely solely upon a broad general statement that she tried but failed to learn anything concerning him.

Notwithstanding the failure of such important proof, the prosecutrix asserts that the presumption of death operates in her favor, and she chooses to treat herself as an unmarried woman, claiming the protection of the statute. Section 2175, Penal Laws (Consol. Laws 1909, c. 40).

On October 25, 1911, the complainant, Annie Kronenberg, laid before a city magistrate an information charging the defendant with a violation of the penal laws, supra, in that he did on January 25, 1911, at the city of New York, in the county of New York, have sexual intercourse with her, an alleged "unmarried woman of previous chaste character" under a promise of marriage. It is further charged in the complaint that, at subsequent dates, the defendant repeated his promise to marry her in the presence and hearing of various witnesses, and that one Eva Spero and Mary Girard, whose corroborating affidavits are attached to the complaint, saw, while looking through an open window leading from their room across an air shaft and into the adjoining room, where the said complainant and defendant were, the commission of the sexual acts referred to in the complaint.

This examination is to determine whether the crime charged has been committed, and whether there is sufficient cause to believe the defendant guilty thereof, or whether he shall be discharged.

Aside from the question as to whether there is any other evidence that may tend to corroborate the prosecutrix, there are interesting propositions of law involved, which must be determined before passing to the probability and truthfulness of complainant's version of the happenings on January 25, 1911.

Seduction was not an offense at common law. It is made a crime by statute in some states. People v. Nelson, 153 N. Y. 90, 46 N. E. 1040, 60 Am. St. Rep. 592.

[1] The statute in New York provides that a person who, under promise of marriage, seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by imprisonment for not more than five years, or by the fine of not more than $1,000, or both, and no conviction can be held on the testimony of the female seduced unsupported by other evidence.

Counsel for the defendant urges a strict construction of the statute because of its penal character. But I must not overlook the legislative rule of construction in section 21 of the Penal Law, which provides:

"The rule that a penal statute is to be strictly construed does not apply to this chapter or any of the provisions thereof, but all such provisions must be construed according to the fair import of their terms, to promote justice and effect the objects of the law."

And to quote Mr. Justice Werner, People v. Abeel, 182 N. Y. 415, 422, 75 N. E. 307, 309 (1 L. R. A. [N. S.] 730, 3 Ann. Cas. 287), in this connection:

"It is not the province of courts to legislate or to nullify statutes by over-strict construction. That is particularly true when the Legislature has ordained a rule of construction."

The following comment was made in the case of People ex rel. Hunt v. Lane, 132 App. Div. 406, 407, 116 N. Y. Supp. 990, 992:

"In construing statutes, words are to be used in their technical meaning, if they have acquired such meaning, and in their popular meaning, if they have not, unless adequate grounds are found either in the context or in the consequences which would follow from a literal interpretation, for concluding that such interpretation does not give the real intention of the Legislature."

[2] The defendant contends that the prosecutrix is a married woman, and therefore unchaste; and in this connection argues that this statute was enacted solely to protect females who have never married, and that, unless virginity is the basis on which such a complaint is predicated, seduction cannot be sustained.

In the case of an unmarried chaste woman, chastity has been claimed, by the defendant, to mean virgo intacta; and the case of Jennings v. Commonwealth, 109 Va. 821, 63 S. E. 1080, 21 L. R. A. (N. S.) 265, 132 Am. St. Rep. 946, 17 Ann. Cas. 64, decided under the Virginia statute, which reads like the New York law, in respect to seductions under a promise of marriage, is cited in support of such claim. That case held that a divorced woman is not an unmarried female and cannot be the subject of seduction, and the court reasons that the case is wholly different with women who have been married. They have known man; and, possessed of the knowledge which such intercourse imparts, if chaste, are immune from the seducer's wiles. To the same effect is People v. Kehoe, 123 Cal. 224, 229, 55 Pac. 911, 69 Am. St. Rep. 52.

Under a statute similar to ours, the Supreme Court of California, in the Kehoe Case, held that:

"Chastity, as here employed, means, in the case of an unmarried female, simply that she is virgo intacta, and though one woman may permit liberties, or even indecencies, * * * so long as that woman has not surrendered her virtue she is not put without the pale of the law."

The defendant also cites Kirk v. Long, 7 Upper Canada Common Pleas Rep. 363, wherein it was held that a father cannot recover damages for the seduction of his daughter, a widow, under the statute 7 Wm. IV, c. 8; and therein the court says that an unmarried female obviously means a female unwedded or in a state of celibacy.

I cannot agree with this view of the counsel for the defendant. Such a construction would operate to exclude, to give one instance, any and every woman upon whom rape was ever perpetrated, from the protection of the law.

The word "seduction" is a derivative from the Latin word meaning to lead astray. Each case of this kind must stand upon its own facts. There is no exact definition of the manner or kind of seductive arts. Hall v. State, 134 Ala. 90, 116, 32 South. 750.

As substantially stated in the last case, there is no doubt that there is a time in the life of a female when she is more susceptible to the arts of the seducer than any other. All things must be considered as tending to establish the probability of the charge of the prosecutrix— her age, the relation in which she stands toward the defendant; the

character of the persuasion, her innocence and ignorance of the sexual relation, and her weakness and experience.

The court may consider that she was at a critical age when judgment is weak and passion strong and when virtue falls an easy prey to the blandishments of the designing libertine—artifices and blandishments, which, exercised upon a woman of more mature years, would fall harmless. Lybarger v. State, 2 Wash. 562, 27 Pac. 449, 1029.

A controlling element in cases of this class is that the prosecutrix was chaste at the time of the perpetration of the sexual acts under a promise to marry which has allured her from a path of rectitude to a bed of debauchery. Putnam v. State, 29 Tex. App. 454, 16 S. W. 97, 25 Am. St. Rep. 738.

The Standard Dictionary defines "chaste" as a state "free from unlawful sexual intercourse; virtuous; said of persons or of their lives or conduct."

[3] "Chastity" means physical purity as a fact and as an actual condition. The courts of this and other states hold it to mean actual personal virtue and character, not mere external reputation for chastity. Carpenter v. People, 8 Barb. 603; Kenyon v. People, 26 N. Y. 203, 84 Am. Dec. 177; People v. Nelson, supra; Safford v. People, 1 Parker, Cr. R. 474; State v. Prizer, 49 Iowa, 531, 31 Am. Rep. 155; State v. Painter, 50 Iowa, 317; Bowers v. State, 29 Ohio St. 542; State v. Lockerby, 50 Minn. 363, 52 N. W. 958, 36 Am. St. Rep. 656; People v. Clark, 33 Mich. 112; Cook v. People, 2 Thomp. & C. 404; Wharton's Criminal Law, vol. 2, § 1757, p. 600.

[4] Some states (Iowa and Minnesota) hold that the presumption of chastity is sufficient to establish previous chaste character and until evidence appears to the contrary the presumption has the force of uncontroverted evidence (State v. Sutherland, 30 Iowa, 570); but, in New York, it is incumbent on the prosecution to bring forth substantial proof of character as part of its case (Safford v. People, 1 Parker, Cr. R. 474; Kenyon v. People, supra).

The Supreme Court of Michigan, in People v. Clark, supra, under a similar statute, held that, even though the parties had had illicit intercourse at short intervals, to warrant a conviction of seduction for a second or third or later acts there should be clear and satisfactory proof of reformation and that the burden of proof in that regard was upon the prosecution.

There can be no doubt that a lawfully married woman, a widow, or a woman who obtains a divorce, may be chaste and actually virtuous. Lawful matrimony or lawful wedlock cannot be said to deprive a good and pure woman of chastity and virtue.

Presiding Justice Welles, in the Carpenter Case, supra, even went so far as to write that "if the female has previously fallen from virtue, but has subsequently reformed and become chaste, there is no doubt but she may be the subject of the offense declared in the statute," and that "the word 'previous,' in this connection, must be understood to mean immediately previous, or to refer to a period terminating immediately previous to the commencement of the guilty conduct of the defendant." See, also, Colby's Criminal Law, vol. 1, p. 507, and foot-

note; 5 Am. & Eng. Ency. of Law (2d Ed.) p. 871, and cases there cited.

Wharton's Criminal Law (10th Ed.) p. 602, § 1757, says:

"For it would be inhuman and perilous to assume that women, once fallen, but reformed, are afterwards exposed without redress to a seducer's arts. The policy of the law in such cases is to reclaim and guard."

If such a woman is entitled to the law's protection, I see no reason in law or good morals why a widow or divorcee should not have equal protection in the same regard before the law.

When the relations between a defendant and the prosecutrix are meretricious and their intercourse illicit, then, surely, such conduct comes within the spirit of the act and is condemned so as to take her out of the class of those chaste unmarried females who are entitled to the protection of this law.

A woman may have been guilty of unchaste conduct and subsequently become chaste in legal contemplation and be the subject of seduction. Wilson v. State, 73 Ala. 527; Polk v. State, 40 Ark. 482, 48 Am. Rep. 17; State v. Carron, 18 Iowa, 372, 87 Am. Dec. 401; State v. Moore, 78 Iowa, 494, 43 N. W. 273; People v. Clark, 33 Mich. 112; State v. Thornton, 108 Mo. 640, 18 S. W. 841; Patterson v. Hayden, 17 Or. 238, 21 Pac. 129, 3 L. R. A. 529, 11 Am. St. Rep. 822.

[5] The prosecutrix must be unmarried.

The authorities do not agree on the meaning of the word "unmarried." Both in the construction of wills, in civil causes generally, and the interpretation of penal statutes, there has been great difference of opinion as to whether it is intended to include persons who have never been married, or whether it applies to those who have been married and are at the time single and unmarried.

"Unmarried" is defined by the Century Dictionary "not married"; "single"; with this note, "Commonly the word implies that the person to whom it is applied has never been married; but it may be used of a widow or widower, and possibly of a divorced person."

"The term is a word of flexible meaning, and slight circumstances, no doubt, will be sufficient to give the word its other meaning of not having a husband or wife at the time in question." 27 Am. & Eng. Ency. of Law (1st Ed.) p. 697.

In Clarke v. Colls, 9 H. L. 601, Lord Cranworth said:

"That the word 'unmarried' may, without any violence to language, mean either 'without ever having been married' or 'not having a husband living at her death.'" Peters v. Balke, 170 Ill. 304, 312, 48 N. E. 1012, 1014.

See, also, In re Saunders Trust, L. R. 1 Eq. Cas. 675; Day v. Barnard, L. R. 30 Eq. Cas. 220; Pratt v. Matthew, 22 Beaver, 328; Mitchell v. Colls, 29 L. J. Ch. 403.

The plain meaning of the statute, in my opinion, is to protect the virtuous female, who is at the time of the offense without living husband. A widow is a chaste unmarried woman unless she engages in illicit intercourse with men.

Mr. Wharton, in a footnote in his work on Criminal Law, says:

"The Roman law made penal the seduction of widows as well as virgins. Stuprum, which is interdicted, included in its widest sense every turpitudo;

in a narrower sense every coitus illicitus; in a sense still more contracted, unchastity. Seduction of women of chastity was made highly penal. 4 Inst. de Publ. Jud. 4, 18. · The canon law, in addition, in case of the seduction of a virgin by an unmarried man, required him to endow and marry her. Ci. de. Adult. 5, 16."

The character and condition of the female identified by the statute is one who is single, having no husband at the time of the commission of the acts which are the basis of this atrocious crime.

Has not the Legislature indicated by "female," in this statute, the class of persons intended to be the subject of a seduction?

Does not the status of the woman at the time of the making of the complaint govern? The term "unmarried" has application only to the time of the commission of the acts constituting seduction. If maids only are included, the statute would shut out all widows, divorcees, and women generally, who at some time or other have sexually known man. In my judgment the main purpose of the statute is to protect all woman who are single at the time of the perpetration of the wrong. The absurdity that a different construction would effect must be obvious. It seems reasonable that, if a woman once fallen from virtue, as is stated in the Carpenter Case, supra, may upon proof of reformation be the subject of a seduction, then a woman who has become a widow after a married life of virtue is entitled to no less protection than the female who at some time in the past has been guilty of illicit intercourse. It does not seem reasonable to me that the Legislature ever intended any such result. I do not think that the word "unmarried" should be construed in its narrow sense.

The language of the statute is "unmarried female." The statute does not use the term "maid" nor "widow," as in the statute of 3 Henry VII, c. 3, after which many of the American statutes are patterned and taken, but the more comprehensive word "female," which is generic in its meaning, including therein all unmarried women, whether spinsters, widows, or divorcees.

· The foundations of civil society require a fair and broad meaning. The policy of the law is to protect. If previously married women are not included, it would be tantamount to saying that by marriage a woman loses the protection of the statute.

Confidence and affection seem to play a great part in all cases of seduction. May not inducements lead even a previously married woman, not single, to consent?

As Judge Pratt says, in People v. Hustis, 32 Hun, 58, 60, this statute "was passed in the interest of the good morals and not to set a premium on licentiousness. It had in view to guard the pure and unsuspecting from illicit connection where they submit solely because they are led to believe that they are under a meritorious promise of marriage with the seducer. Any other construction would have a tendency to subvert good morals and furnish a cover for licentiousness and blackmail."

In People v. Alger, 1 Parker, Cr. R. 333, 335, the court states that the framers of the act seem to have assumed that, under such circumstances, the consent of the female might be much more readily obtained. That she confiding in the promise of future marriage, and re-

lying upon it, would be more liable to yield to the solicitations and temptations of the man under this obligation to her, than otherwise. Hence the statute was confined to this particular class of cases. It was to protect females, really standing in such a relation to a man and confiding in his promise, from the employment of the seductive arts against them by the man, and to punish him who, under such cir-- cumstances, should be guilty of violating and betraying and disappointing that confidence to the disgrace and ruin of the female, and the injury and scandal of society, that the statute was chiefly enacted.

Matter of Burton's Will, 4 Misc. Rep. 512, 516, 25 N. Y. Supp. 824, 826, was a proceeding to prove an instrument in writing as the will of Anna E. Burton, deceased. It was claimed that her will was revoked by her subsequent marriage under the statute providing that "a will executed by an unmarried woman shall be deemed revoked by her subsequent marriage." 2 Rev. St. (1st Ed.) pt. 2, art. 3, c. 6, tit. 1, § 44. The court says:

"There can be no doubt that when she executed the will she was a married woman. Webster defined 'unmarried' as meaning 'not married; having no husband or wife,' and our Court of Appeals held, in Re Kaufman, 131 N. Y. 620 [30 N. E. 242, 15 L. R. A. 292], that the term 'unmarried woman' as used in this statute is a woman 'not in a state of marriage.'"

[6-8] The words of a statute are to be taken in their ordinary and familiar sense. The court is not at liberty to obtrude into a statute a condition or qualification not found therein. It cannot speculate upon the intention of the Legislature where the words are clear, and to construe an act upon its own notions of what ought to have been enacted; nor can courts correct what they deem excesses or omissions in the legislation. Penal statutes must receive a strict construction. They cannot be extended by equity; that is, things that do not come within the words shall not be brought within it by construction. Potter's Dwarris, Stat. 193, 200, 203, 204, 245, 247; Suth. Stat. Const. §§ 235, 237, 238, et seq.

The word "unmarried" was the pivotal word on which the controversy in the construction of a will depended, in Matter of Union Trust Co., 179 N. Y. 261, 266, 72 N. E. 107, 109, wherein Chief Justice Cullen, writing for the court, says, that it cannot be said that the primary meaning of "unmarried" is never having been married, yet he adds:

"The most that can be said is that while either use of the word is correct and justified, not only by the lexicographers but by the decisions, the term is more frequently employed as referring to people who have never been married than to widows, widowers, or divorced persons."

And on page 264 of 179 N. Y., on page 108 of 72 N. E., the Chief Justice continues:

"The great weight of authority is to the effect that in such cases" (of wills) 'unmarried' is to be construed as not being married at the time. * * *"

The Appellate Division, Supreme Court, in Matter of Oakley, 67 App. Div. 493, 496, 74 N. Y. Supp. 206, 208, in discussing the case of

Dalrymply v. Hall, 16 Ch. Div. 717, quoted a headnote from that case that, *in the absence of context,* showing a contrary intention, the word "unmarried" must be construed according to its original and primary meaning as "never having been married," and therefore that the gift to the children of B. did not take effect; he being a widower. That case, however, is equally an authority for holding that, where the context does show a different intention, the word "unmarried" should not be defined as "never having been married."

[9] It devolves upon the state to show that the prosecutrix is an unmarried female, not necessarily by direct evidence, but, like any other fact, it may be shown by facts and circumstances. State v. Reed, 153 Mo. 451, 55 S. W. 74.

[10] Just as character is not founded on a presumption of law (People v. Nelson, 153 N. Y. 90, 97, 46 N. E. 1040, 1042 [60 Am. St. Rep. 592]), so by operation of law a woman cannot be deemed "unmarried" within the meaning of this penal statute when in fact she may have a husband living. It was not intended to treat a presumptively unmarried woman as being within a state of constructive and presumptive widowhood. It must be absolute and defined. While she may legally consent to and actually marry where in a proper case the presumption of death of her husband operates, still the marriage at best is voidable (Domestic Relations Law [Consol. Laws 1909, c. 14] § 7, subd. 5), and on the return of her former husband, or proof that he is still living, the second marriage may be annulled. Let me assume that in such a case the defendant were to be held and convicted of seduction under promise to marry, and then complainant's husband was found to be still alive; we would have the anomalous condition of a presumption of law working an injustice. No defendant should be convicted or even held on a case, one of the essential elements of which is not actually proven, but which under a presumption of the civil law is presumed to exist at the time of the alleged seduction.

The Supreme Court of Missouri, in State v. Wheeler, 108 Mo. 658, 664, 18 S. W. 924, 926, laid down this rule:

"We know of no presumption that a woman is unmarried in the absence of any evidence whatever on the point."

In Zabriskie v. State, 43 N. J. Law, 640, 642 (39 Am. Rep. 610), the court said, "The law will not presume that the female is single," and it even held that chastity will not be presumed as a conclusion of law; that presumptions of law are used as mere aids to the defense, and not as instruments of assault. People v. Krusick, 93 Cal. 74, 78, 28 Pac. 794.

The defendant in the Krusick Case was convicted of seducing an unmarried female of previous chaste character under a promise of marriage. The trial court charged the jury:

"You have no right to infer or presume that the prosecuting witness was an unmarried female. It devolved upon the prosecution to establish that fact, * * * and, if the prosecution has failed to do so, it is your duty to acquit the defendant."

There was no proof that the witness was unmarried. On appeal the court said that reference to her as "girl," "young lady," and "Miss" does not furnish enough evidence of the fact, and adds:

"The jury were not authorized to found an inference thereon that she was unmarried, nor can the defendant be convicted upon a mere inference of this fact, any more than upon an inference of the other facts which are necessary to constitute a crime (State v. Carr. 60 Iowa, 453 [15 N. W. 271]); * * * and the fact that she was unmarried is an essential element of the crime, and, until it is shown, the presumption of innocence prevails in favor of the defendant."

In Matter of Wagener, 143 App. Div. 286, 287, 128 N. Y. Supp. 164, 165, Judge Miller writes:

"The general rule that an absentee who has not been heard of for seven years may be presumed to be dead at the expiration of the seven years, for the purpose of distributing an estate, is well settled. See Jackson v. Claw, 18 Johns. 347; Eagle v. Emmet, 4 Bradf. Sur. 117; Matter of Sullivan, 51 Hun, 378 [4 N. Y. Supp. 59]; Barson v. Mulligan, 191 N. Y. 306, 324 [84 N. E. 75, 16 L. R. A. (N. S.) 151]. Of course, the rule is to be applied with caution (Matter of Board of Education of New York, 173 N. Y. 321, 326 [66 N. E. 11]), and it has limitations. The rule and its limitations are stated, with supporting authorities, in Lawson's Presumptive Evidence, p. 251 et seq. Circumstances may justify a finding of death before, or they may be such as to give rise to no presumption either at or after, the expiration of seven years. Each case must necessarily depend upon its own facts. When the failure of the absentee to communicate with his friends is satisfactorily accounted for on some other hypothesis than that of death, or when no inquiry has been directed to the place where he has last known to be as in Dunn v. Travis, 56 App. Div. 317 [67 N. Y. Supp. 743], no presumption arises. But it is to be borne in mind that the rule was adopted by analogy to the statutes with reference to bigamy and to leases for life, as a rule of necessity to fix the rights of the living with relation to the absent, and that it is necessarily an artificial rule, depending for its application upon the known facts regardless of what the actual fact may be. Rights are not to be held in abeyance indefinitely on account of absence of a person of whom no trace can be found. He may not be dead, but he will be presumed to be dead for the purpose of fixing the rights of those known to be living. In Davie v Briggs, 97 U. S. 633 [24 L. Ed. 1086], Mr. Justice Harlan quotes the following rule from Stephen's Law of Evidence, c. 14, art. 99: '* * *. A person shown not to have been heard of for seven years by those (if any) who, if he had been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death.' "

The common-law presumption of death after a lapse of years is not sufficient in a criminal prosecution. There are no such presumptions under the criminal law, except the presumption of innocence in all stages of criminal proceedings, and those which establish rules of evidence that may be rebutted. The criminal courts should not presume the death of another in cases of this class, nor should any conviction for crime be had on mere suspicion or on a presumption of the existence of a fact for which there is no basis; and, if the evidence is dubious, it should be resolved in the defendant's favor.

On an application for letters of administration upon the estate of an alleged decedent, Surrogate McCauley in writing in Matter of Jones, 70 Misc. Rep. 154, 157, 128 N. Y. Supp. 477, 479, said:

"It is quite impossible to give any standard by which to measure the suffi-
ciency of circumstantial evidence of death; but mere information and be-
lief, founded on nothing, is, of course, not proof in any legal sense."

Mere disappearance does not give rise to the presumption of death
(Matter of Matthews, 75 Misc. Rep. 449, 136 N. Y. Supp. 636)' and
where, as in this case, the husband of the prosecutrix left supposedly
with another woman, it can hardly be expected that he would make
his whereabouts known to any one (Town of Van Buren v. City of
Syracuse, 72 Misc. Rep. 463, 131 N. Y. Supp. 345). It is improbable
that he, even if alive, would or could have been heard of at, or could
or would have communicated with, his residence, home, or domicile.
Lawson's Law of Presumptive Evidence, rule 53, p. 294.

The death of the husband of the prosecutrix has not been proven,
nor has any evidence been adduced from which it can be reasonably
inferred. Under the circumstances of this case, I cannot presume that
the prosecutrix is an unmarried woman within the purview of the stat-
ute under consideration.

[11] The promise to marry must be absolute. A conditional prom-
ise has been held to be insufficient. People v. Van Alstyne, 144 N. Y.
361, 39 N. E. 343; Armstrong v. People, 70 N. Y. 38.

The persuasion which the prosecutrix testified that the defendant
used to overcome her natural scruples led to the fixing of the date of
promised marriage. She says that the defendant would marry her
"when" his daughter Hilly married. The district attorney contends
that this is not a promise conditional in character, although the pros-
ecutrix admitted in her cross-examination that no such marriage has
ever taken place. The people claim that this is a mere limitation ap-
plicable only to the time when the marriage should be performed.

It is true that it is not essential that the promise should be to marry
the prosecutrix immediately or at any definitely fixed time, and that a
promise to marry in the future is sufficient; but, nevertheless, where
the parties concerned have it understood that such marriage is de-
pendent upon a contingency which may never happen, then, in my
opinion, it seems that the promise is not absolute and the require-
ments of the statute have not been met.

The court, writing in People v. Duryea, 81 Hun, 390, 392, 30 N. Y.
Supp. 877, 878, says:

"It is impossible to have seduction under a promise to marry when the
only promise at the time of the seduction is one depending upon an event
that may never occur."

The people failing to make out a prima facie case, the complaint
must be dismissed, and the defendant is ordered discharged.