THE STATE OF MISSOURI TO THE USE OF ABBIE KEARNEY ET AL., Respondent, v. JOHN FINN ET AL., Appellants.

St. Louis Court of Appeals, January 18, 1887.

1. SHERIFF — DILIGENCE IN EXECUTING WRITS. — A sheriff in serving a summons is required to use only ordinary diligence, regard being had to his duties to all parties having process in his hands ; and what is proper diligence will depend upon the facts in each case.

2. —— FALSE RETURN — DAMAGES — BACK TAXES. — A sheriff who makes a return of "not found" upon a summons in a back tax suit against one who is a resident of the bailiwick, and who could have been found by the exercise of reasonable diligence, is responsible on his official bond for all damages resulting from a judicial sale of the property upon constructive service.

3. —— EVIDENCE — PRACTICE. — In such an action it is not error to admit evidence, upon the question of the sheriff's diligence, that the residence of the defendant owner was set opposite the tax entry on the public tax records, which were easily accessible to the sheriff.

4. PRACTICE — ATTORNEY'S MISCONDUCT. — Unwarranted remarks, made by an attorney in argument to the jury, will not necessarily warrant a reversal of the judgment, if the attorney be promptly rebuked by the trial court.

5. —— RES JUDICATA. — The payment of nominal damages under an execution, issued by the clerk of the trial court of his own motion, pending an appeal, is without avail as a defence on a second trial of the cause after a reversal of the judgment by the appellate court.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Affirmed.*

E. T. FARISH, for the appellants : The relators, having failed to use the means of preventing the loss of their property, can not be allowed to hold the sheriff liable, to the value of their property. *The State ex rel. v. Heinrich;* 14 Mo. App. 146. An execution having been issued and placed in the hands of the sheriff in the usual course, and such execution having been enforced and paid, operated a complete discharge of any liability on the cause of action stated in the petition. Freeman on Judgments, sects. 462 and 466.

C. P. & J. D. JOHNSON, for the respondent : The relators knew nothing of the judgment in the tax case, nor of the sale of their property under it, until after the title to the latter had passed irrevocably from them. The setting aside of the judgment would have availed

them nothing, as the sale passed the title to the pur-
chaser thereat. *Tower v. Lennox*, 52 Mo. 115; *Bates v.
Bank*, 15 Mo. 309; *Jennings v. Brizeadine*, 44 Mo. 333;
*Jones v. Talbot*, 9 Mo. 125; *McNair v. Biddle*, 8 Mo.
266; *Castleman v. Relfe*, 50 Mo. 588; *Gott v. Rowell*,
41 Mo. 416; *Card v. Lackland*, 49 Mo. 454.

ROMBAUER, J., delivered the opinion of the court.

The opinion of this court on a former appeal is found
in 11 Mo. App. 400. The relators, having obtained judg-
ment for nominal damages only, appealed to this court,
which affirmed the judgment. They then sued out a
writ of error from the supreme court, and that court
reversed the judgment and remanded the cause for new
trial. 87 Mo. 311.

The action is on a sheriff's bond, against him and
his sureties, for official misconduct in making a false
return. The relators claim that the sheriff, in a back
tax case, prosecuted against them, made a false return
of "not found" on the summons, although the relators
were residents of the city of St. Louis, and could have
been found by the exercise of proper diligence on his
part, and that, in consequence thereof, the relators were
not advised of said suit, until after judgment was ren-
dered therein against the property of the relator, Abbie,
and such property sold to a third person, whereby it was
wholly lost to her, to her damage in the sum of five
thousand dollars.

It appears, from the opinion of this court and of the
supreme court heretofore rendered herein, that the only
question raised by the record on the former appeal, was
whether the direct and immediate cause of the relators'
damage was the sheriff's return of not found, or
whether the proximate cause of such loss was the order
of the circuit court, dispensing with personal service,
and authorizing constructive service upon the relators
by publication.

This court held that, inasmuch as the proceeding in

a back tax case is *sui generis*, and the court can not authorize service by publication, unless it is first satisfied that the defendant is, in point of fact, beyond its process, the sheriff's return did not furnish the sole evidence upon which the court acted, and could not be considered the proximate cause of the resulting injury.

This view did not obtain the sanction of the supreme court. That court held, that according to the usual and well known practice in the court, the order of publication, judgment, and sale were the natural results of the false return, though the further order of the court was necessary thereto and founded thereon.

The last trial resulted in a verdict for the relators for $1,180, and no question is made but that the verdict is warranted unless the trial court erred in matters of law.

The defendants appealing assign the following errors :

1. That the court erred in not vacating the verdict, as unsupported by any substantial evidence of the sheriff's misconduct.

2. That the court excluded legal evidence offered by the defendants, and refused proper instructions asked by them.

3. That the court admitted improper evidence for the relators, against the defendants' objection.

4. That the relators' counsel misbehaved in his address to the jury, by attempting to inflame their prejudices.

5. That the former judgment was paid and satisfied and such satisfaction is a bar to this proceeding.

I. The delinquent tax sued for was a tax for the year 1875. The summons was issued March 29, 1878, and returned, "not found," October 7, 1878. The relators' evidence tended to show that they resided, since 1873, at the same place in the city of St. Louis. That the relator, Frank, served on juries in the years 1875 and 1876, but not since, and had been a witness in a number of

cases prior to the return of the summons. That he had been an extensive building contractor up to 1875, but, suffering from a sunstroke in that year, was temporarily confined in an insane asylum for several months, and after leaving it took no contracts, but worked mostly as a journeyman. That he knew personally several of the sheriff's deputies.

It also tended to show that the official books in the office of the assessor, and of the comptroller of the city, both of which are in the same building with the sheriff's office, and in close proximity thereto, contained his name and exact place of residence, marked in the margin of the books containing the tax entry sued upon, prior to the date of the sheriff's return. Also, that the occupants of the premises against which the back tax suit was brought knew his exact place of residence.

The defendants' evidence tended to show that the sheriff's deputies made reasonable efforts to find the relators. That they made inquiries in the neighborhood of the premises, and on the premises, charged with the tax of an apparent occupant thereof. That they inquired of the attorney charged with the prosecution of the case, and also examined the city directory (which, it is admitted, did not contain the relators' names). That these efforts continued for several weeks, although there was a very large number of writs to be served. That neither of the deputies charged with the service of the writs knew either of the relators personally, and that it was not their habit to go for information to the assessor's or comptroller's office.

This being substantially all the evidence on that point, we are not prepared to say that the court was justified to hold, as a matter of law, that there was no evidence of the sheriff's dereliction. When the relator proved that he was for years previous a resident of the city, engaged in business, occupying continuously the same premises as his residence ; that the residents of the property mentioned in the summons knew his exact

whereabouts; that the sheriff could have ascertained his residence by stepping into public offices, within a few feet of his own office, and inspecting records accessible to all, the court was warranted, under proper instructions defining the extent of diligence required of a sheriff in such cases, to submit the question to the jury, whether, in view of all the evidence, he did use such diligence in this particular case.

All the instructions which the defendants asked, as to the extent of diligence required of the sheriff, were given. They are full, fair, and in accordance with the opinion of the supreme court in this case.

II. The defendants complain that the court did not permit them to show that the relators knew that their property was subject to the tax of 1875, and that that tax was delinquent; and that the court furthermore erred in refusing the following instructions which they asked on that subject:

"2. If the jury believe, from the evidence, that the defendants, or either of them, were informed or advised by the collector of taxes that the property in question was delinquent for the taxes of 1875, and that they had such knowledge in 1878, when the suit for back taxes for 1878 was brought, and yet they allowed said taxes to remain unpaid, and in consequence the suit to enforce the collection of said taxes was brought and judgment rendered therefor, and the property sold, as stated in the petition, the jury are instructed that the plaintiffs, Kearney and wife, were guilty of such negligence as precludes them from recovery in this case, and the jury will so find and return a verdict for the defendants."

"3. The jury are instructed that if they believe, from the evidence, that Frank Kearney or his wife, Abbie Kearney, knew that the taxes of 1875 on the property in question were unpaid, and that they suffered and allowed the same to be delinquent, and that in consequence suit was instituted to enforce collection of the same, and judgment had, and the property sold, as alleged in the

petition, they are instructed that there can be no recovery in this cause for the loss of said property."

"4. The jury are instructed that, under the revenue law, the taxes of 1875, if not paid before the end of the year 1877, were liable to be sued for in January, 1878, or thereafter, and that the said tax of 1875 on the property in question not having been paid, the Kearneys were bound to know, and are presumed in law to know, that the said property was delinquent for taxes of 1875, and liable to be sold as aforesaid ; and the jury are further instructed that the said Kearneys, by their failure to pay said tax, and allowing the same to remain delinquent, were guilty of such negligence as precluded them from any right of recovery."

These complaints are both founded on the proposition, discussed *obiter* in the former opinion of this court, that "in determining what the damages are, the conduct of the person complaining comes into consideration," and that "if the party injured has it in his power to take measures by which his loss will be less aggravated, this will be expected of him." See cases cited in former opinion (11 Mo. App. 405).

Touching the correctness of the general rule, there can be no dispute. The difficulty arises in its application to the particular facts under review. The mode of foreclosing a delinquent tax is prescribed by law, and as every one must be conclusively presumed to know that his real estate is subject to taxation, and that if such tax is not paid within a certain time that it will be foreclosed in the manner provided by law, and his real estate sold to satisfy the same, it necessarily follows that he is guilty of some contributory negligence in bringing about that ultimate result.

On the other hand it may be said that, notwithstanding the owner's negligence, he has a right to assume that the legal methods prescribed for such foreclosure will be complied with, and that in cases where he is a resident and can be found, he will be personally

advised that proceedings of foreclosure have been commenced. When, therefore, as in this case, owing to the sheriff's negligence, he is not thus advised, it is the negligence of the latter and not his own which is the direct cause of the loss.

Assuming the correctness of the proposition as first above stated, and it would result that, in no event could the sheriff be held liable, for his false return in a back tax case, for more than nominal damages. A valid tax is essential to a valid judgment. If the tax is valid the person is conclusively presumed to know that his property has been assessed with it, and that he has failed to pay it; and he is, moreover, conclusively presumed to know that the natural legal results will follow from such default.

The supreme court, in holding, as it did in this case, that a resident plaintiff, not served personally with summons in a back tax case, owing to the sheriff's default, may recover of the sheriff substantial damages, necessarily held that the plaintiff's negligence, in failing to pay the tax, is not the proximate cause of his ultimate loss, and that the second proposition above stated is the correct one.

It results from the above that the evidence offered by the defendant, which tended to show that the plaintiff knew, what she was conclusively presumed to know, was rightly excluded, and that the instructions, which assumed that such knowledge on the part of the plaintiff was fatal to her recovery, were rightly refused.

III. There was no error on the part of the court in admitting evidence tending to show that the public records of tax entries, in the assessor's and comptroller's offices, in existence at and before the time when the sheriff's return was made, disclosed the exact place of the plaintiff's residence. The question was one of proper diligence on the part of the sheriff in ascertaining the fact, whether the plaintiff could be found. All facts bearing on that inquiry were legitimate evidence for the

consideration of the jury. The sheriff was even permitted to show that a private book, called a directory, did not contain the name and residence of the plaintiff, in 1878, although it was not even shown what such book was. The sheriff's deputy, having general charge and supervision of the service of these writs, testified that it was customary for persons, in making returns of their personal property for taxation, to give their residences ; that he knew of this prior to the return complained of, and knew that an entry of this fact was made in these public records. The time when such evidence was admitted was a matter for the discretion of the court, and it does not appear that such discretion was abused, to the defendants' prejudice.

IV. We have had occasion repeatedly to condemn remarks by counsel, in their arguments to the jury, when such remarks are unwarranted by the evidence. The practice of making such remarks can not be too severely condemned. *Gibson v. Zeibig, ante,* p. 65. That the remarks of the plaintiff's counsel, in his closing address to the jury, which are complained of in this case, were unwarranted and highly objectionable, must be conceded. The record, however, shows that counsel was instantly stopped by the court, and told that there was no evidence to warrant these remarks, and thereupon at once desisted. Under the circumstances, we are not warranted to vacate a judgment, otherwise correct, on this ground alone. *Goldman v. Wolff,* 6 Mo. App. 490, 497; *The State v. Lee,* 66 Mo. 165, 168. We are justified to assume that the rebuke of the court has warned the jury to disregard the statement.

V. The record shows that after the judgment, formerly rendered for nominal damages, was affirmed by this court, the clerk of the circuit court, on his own motion, issued an execution on the judgment, and that the defendant paid such execution. This fact is set up by the answer and relied on in bar of the present recovery. It does not appear that the execution was issued upon

the plaintiff's request, or that she derived any benefit therefrom. The judgment itself was subsequently vacated, and was not available to substantiate a plea of former recovery. Nor could the issue of the execution estop the plaintiff, as it is not shown that she received the benefit of the proceeds in any manner. The defendants were clearly liable for the costs paid on that execution, even under the present judgment. The same observations apply to the receipt by the plaintiff of the surplus realized on the tax sale, of which the defendants got the benefit in the last judgment against them.

A careful examination of the record discloses no errors warranting a reversal of the judgment.

The judgment is affirmed. All the judges concur.