THE STATE v. ECKLER, *Appellant.*

DIVISION TWO.

1. **Criminal Law**: SEDUCTION: INDICTMENT. An indictment for seduction under promise of marriage is sufficient where it alleges that defendant seduced the prosecutrix under promise of marriage. It need not allege that she promised to marry defendant.

2. ———: ———: EVIDENCE. On a trial for seduction under promise of marriage, the prosecutrix may be asked by defendant if she had ever authorized anyone to accept money to settle the suit.

3. ———: ———: INDICTMENT: PROOF. In a prosecution for seduction under promise of marriage, the state must allege and prove in the first instance the good repute of the prosecutrix.

*Appeal from Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

*George Robertson* for appellant.

(1) The verdict of the jury of conviction is contrary to the evidence; for that of the prosecutrix shows that she was not seduced by the defendant, but that she procured the promise of marriage to her as a consideration for the intercourse. The defendant was, therefore, entitled to an instruction to acquit. *State v. Reeves*, 97 Mo. 677; *Putnam v. State*, 16 S. W. Rep. 97. (2)' The court erred in refusing to permit the defendant to ask of the prosecutrix if she had ever authorized any person to accept money to settle the case. The letter of the prosecuting attorney, on pages 10 and 11 of the abstract, is very suggestive that a settlement of the case could have been effected with money, by her authority. The motives of a prosecution may always be inquired into. Wharton on Evidence, sec. 547, and note 2, also sec. 566; *State v. Downs*, 91 Mo. 19. Every witness who comes upon the stand must come prepared to show that he gives his evidence from pure motives, and the opposite side has a right in any proper way to show that he is moved by prejudice or corruption. 1 Greenl. Ev., sec. 462. (3) The court erred in refusing to give the jury an instruction to acquit at the close of the state's case. It had failed to prove one essential averment of the indictment, to-wit, the good repute of the prosecutrix. *State v. Hill*, 91 Mo. 423; Bishop's Stat. Crimes, sec. 648; *Zabraskie v. State*, 43 N. J. L. 640; 39 Am. Rep. 610; *Commonwealth v. Whittaker*, 131 Mass. 224; *State v. McCaskey*, 104 Mo. 644; 1 Bishop Criminal Procedure, sec. 1106.

*John M. Wood*, Attorney General, for the State.

(1) The prosecuting witness could not have bound the state by any arrangement or compromise which she

might have made, and the objection to the question asked her, as to whether she had ever authorized anyone to compromise the case, was properly sustained. (2) Until attacked, the presumption would be indulged that the prosecutrix was a person of good repute. The defendant having introduced testimony tending to shake the force of that presumption, it was competent for the state to introduce testimony on that question in rebuttal. However, the order in which the testimony may be introduced is largely in the discretion of the trial court, and no cause for a reversal. Defendant's objection was properly overruled. (3) The instructions in this case conform to the ruling of this court in the cases of *State v. Reeves*, 97 Mo. 668, and *State v. Patterson*, 88 Mo. 88. (4) The indictment charges the offense in the language of the statute, and is sufficient. R. S. 1879, sec. 1259; Kelley's Crim. Law, sec. 74 (appendix); *State v. Primm*, 98 Mo. 368.

THOMAS, J.—Defendant was found guilty of seduction under promise of marriage in the circuit court of Montgomery county in October, 1889, and sentenced to two years' imprisonment in the penitentiary.

I. The court committed no error in overruling defendant's motion to quash the indictment. It charged that defendant seduced Ida Mitchell "under promise of marriage." This was sufficient without averring that Ida Mitchell promised also to marry him. *State v. Primm*, 98 Mo. 368.

II. At the close of the evidence the defendant asked the court to instruct the jury to return a verdict of acquittal, which the court refused to do, and this is assigned for error. Ida Mitchell, the prosecutrix, testified that defendant promised to marry her, and that she had intercourse with him solely because he made the promise, upon which she relied. The argument is, that this testimony of hers shows a bargain and sale of her virtue, and for that reason the court ought to have declared as

a matter of law that defendant committed no crime under the circumstances detailed by the girl, and the *Reeves case*, 97 Mo. 668, is cited as authority for that position. In the first place the report shows that the majority of the court did not indorse all that was said in that case. Two of the judges are marked as concurring in the result only, while one dissented *in toto*, so that the opinion as an entirety had the concurrence of two judges only. In the second place we do not regard that case as teaching the doctrine contended for. It is true Judge SHERWOOD, who delivered the opinion, did use very strong language in condemnation of a girl who would bargain her virtue in consideration of a promise of marriage, but he was discussing an instruction which omitted the word "*seduce*," and the instruction was condemned solely because of such omission.

We do not understand that the learned judge intended to lay down the doctrine that if a virtuous girl should be seduced by reason of a promise of marriage no crime would be committed. His language, though vigorous, taken with its context, will not bear the construction defendant's counsel gives it. Nor will the statute bear such construction. The language is, that "if any person shall, *under or by a promise of marriage*, seduce and debauch any unmarried female of good repute," etc. What is the plain, ordinary meaning of the words, "under or by a promise of marriage?" They evidently mean, by means, by virtue, by reason of a promise of marriage. That is, the man makes the promise, and then by using it as a means he seduces and debauches the girl. How can he use it as a means, unless he brings it to bear on her volition, by impressing his victim with the conviction that he honestly intends to consummate the marriage? Suppose the testimony of the girl in this case was reversed, and that she had sworn that she did not yield to the lustful embraces of defendant, relying in confidence upon the

promise he made her, but that she would have submitted herself to him anyhow, whether the promise of marriage had been made or not, will anyone contend for a moment that defendant would have been guilty of a crime? In that case it could not be held that he seduced and debauched her "*under or by a promise of marriage.*"

To constitute the crime denounced by the statute under review, the female must rely on the promise of marriage, and submit her person to the other party because the promise was made. The promise must be the inducement for her consent to the intercourse. And this construction of the statute has the sanction of reason, and justice, too, to support it. Granting that both parties stand equal in the momentary gratification of their sexual passions and desires, and are equally anxious to indulge "in the pleasures of sin for a season," behold how unequal they stand as to the results! The man takes but slight risks of losing reputation in society. The woman assumes the risks of becoming a social outcast and of being spurned from society. He takes no risks of physical or mental pain. She assumes the risks of the pains of pregnancy and maternity. He takes no risks of being marked for the scorn and contempt of his associates. She takes the risks of carrying with her, before and after she becomes a mother, the evidences of her shame. He takes no risks of being incumbered with the fruits of their illicit commerce. She takes the risks of bringing into the world a bastard, which will, besides making her a social outcast, increase her burdens of life, and at the same time operate to diminish her opportunities to gain a livelihood, and to make another eligible matrimonial alliance. He goes forth free from pain, from shame, from loss of caste in society, from incumbrance in all respects. She, in case of pregnancy, is abandoned and left a ruined and fallen woman, deeply impressed with a sense of shame, and spurned by society. We cannot conceive of a more

pitiable object than a girl who, deceived by the prom-
ise of marriage to the man she loves, yields her per-
son to his embraces, and, then, be abandoned to her fate
by her seducer to bear all the burdens of her forlorn
situation alone.

These are the burdens the woman must bear by
reason of her sin fully participated in by the man. If
the defendant, with intent to cheat and defraud, had
obtained from Ida Mitchell $30 in money or property by
deception and false pretense he would have been guilty
of a felony. And the statute has wisely provided that
if he rob her of the dearest jewel she possesses by a
false promise of marriage he shall also be guilty of a
felony. It is no answer to say she voluntarily con-
sented. So did he. She offered to marry him in good
faith. He promised to marry her in bad faith. She con-
sented to the illicit intercourse confidently relying on
the defendant's promise to make her his wife, and thus
legitimize the possible fruits of such intercourse. He
plays a false part. He makes her believe he intends to
marry her when he does not. He makes the promise
not for the purpose of consummating the marriage, but
for the purpose of obtaining her consent to gratify his
lusts. Shall it be said that a man who is thus false, and
by deception and fraud induces a girl to do that which
bears such bitter fruit for her, and then heartlessly
deserts and abandons her, shall be adjudged guilty of no
crime? We answer most emphatically, No!

While on this point we will take occasion to say, as
the case will be sent back for new trial for error here-
after to be noticed, that the court's instructions were
too favorable to defendant. In the first place the court
told the jury that "by the term 'seduced,' as used in
the indictment, is meant that a virtuous woman has
been corrupted, deceived and drawn aside from the
path of virtue which she was pursuing, by such acts
and wiles as calculated to operate upon a virtuous
female. The term debauch means carnally known."

If the words, "in connection with a promise of marriage," had been inserted in this instruction after the word "wiles," it would have been faultless. But the court by modifying an instruction prayed for by defendant went farther and told the jury that "if defendant promised the said Ida Mitchell to marry her, or that he would marry her by a certain time if she would permit him to have sexual intercourse with her, and she on the faith of such promise alone without being seduced as before defined did consent and did have such intercourse with defendant," they would acquit him. This is not the law.

Mr. Bishop in his work on statutory crimes, section 638, says, "If the marriage promise was the inducement to the girl to yield to him, rendering it void because founded on an immoral consideration, it is still sufficient as foundation for this indictment." Mr. Desty uses this emphatic language in his American Criminal Law, section 135a: "*The promise of marriage must be the consideration, and it must be a promise in the nature of a deceit.*" In *Kenyon v. The People*, 26 N. Y. 203, the trial court charged the jury that "if you shall be fully satisfied from the evidence that the defendant promised to marry the prosecutrix, if she would have carnal connection with him, and she believing in such promise, and intending on her part to accept such offer of marriage, did have such carnal connection, it is a sufficient promise of marriage under the statute." In speaking of this charge the court of appeals says: "This seems to me unobjectionable. It is not necessary that the promise should be a valid and binding one between the parties. * * * It is enough that a promise is made which is a consideration for or inducement to the intercourse." In *Boyce v. People*, 55 N. Y., the prosecutrix testified that the promise of marriage was a conditional one, that the accused would marry her if she would consent to an illicit connection with him, and that, relying on the promise, she consented.

Held that this was sufficient to bring the case within the statute,—citing the *Kenyon case, supra.*

The supreme court of Indiana, in *Callahan v. The State,* 63 Ind. 198, held that "a promise of marriage by means of which a seduction is accomplished, made by the defendant to the prosecutrix on condition that she will consent to the act of sexual intercourse, is a promise of marriage within the meaning of section 15, 2 Revised Statutes, 1876, page 431, defining the crime of seduction." The cases from New York and Indiana are in point in this case, for the statutes of those states as to the promise of marriage are identical with ours.

These citations are enough to show what the general doctrine is, and they fully sustain the views we have expressed herein. The question whether the prosecutrix yielded her person relying on defendant's promise made at the time as the inducement to the intercourse is one of fact and not of law. The fact, that the offer to marry was made in consideration, that she would consent to carnal connection, may be considered very properly by the jury, in determining the influences that operated upon the woman at the time. The promise must not only be made, but she must act upon it in good faith, and be deceived by it, and whether she accepted the promise in good faith and was deceived by it is a question for the jury. In the case at bar the trial court informed the jury that, if defendant *seduced and debauched* Ida Mitchell under promise of marriage, he was guilty. This with the definition of the words "seduce" and "debauch" as above noted, and with an instruction that the girl must be corroborated as to the promise of marriage, properly defined the offense. The use of the words "seduce" and "debauch," as they were defined, obviated the very objections made to the instruction in the *Reeves case, supra,* and the giving of the modified instruction at the instance of defendant above noted interjected an improper and erroneous element into the case, and should have been refused.

We do not wish to be understood. as non-concurring in all that has been said by this court in regard to the meaning of the word "seduce." We think the interpretation given it is correct. A woman finding herself pregnant has the most potent motives to assert that her condition was brought about by a promise of marriage. These are obvious. She must excuse the act to her family, friends and society, and we can readily see how every consideration would impel her to attribute it to deception and betrayal. Hence, her testimony ought always to be closely scrutinized.

III. The defendant asked the prosecutrix while on the witness stand, on cross-examination, if she had ever authorized any person to accept money to settle the case, or offered to take money and dismiss it, and on objection of the state she was not required or permitted to answer. The evidence shows that the prosecuting attorney wrote defendant that Miss Mitchell told him to settle the matter in any way he saw fit. We think the court committed error in refusing to require the prosecutrix to answer the question propounded. The evidence of the marriage outside of the girl's testimony was very meager, indeed. This promise was most positively denied by defendant. The girl was over twenty years of age at the time of the alleged seduction, and the defendant had a right to know what motives and influences operated upon her mind in the prosecution of the case, in order to know what weight to give her testimony. Whar. on Ev., secs. 547, 566; *State v. Downs*, 91 Mo. 19. This is a close case, and the exclusion of such evidence probably operated to defendant's prejudice. *State v. Thomas*, 78 Mo. 328.

IV. The state is required in a case of this character to allege and prove in the first instance the good repute of the female. *State v. McCaskey*, 104 Mo. 644.

The judgment is reversed for the errors hereinbefore pointed out, and the case remanded for new trial. GANTT, P. J., and MACFARLANE, J., concur in paragraphs 1, 3 and 4 only.