THE STATE v. BRANDENBURG, *Appellant.*

Division Two, November 21, 1893.

1. **Evidence**: PROOF OF GOOD CHARACTER.   Evidence that the witness is acquainted with another and has never heard anything against her character is competent evidence of such character and it need not be based on knowledge of what is "generally said" of her.

2. **Criminal Law**: SEDUCTION: INTENT.   The fact that the defendant in a prosecution for seducing an unmarried female of good repute under the age of eighteen years may have intended to marry her is immaterial and evidence as to such intent is incompetent.

3. ———: ———: "GOOD REPUTE."   The definition of the term "good repute" adopted in *State v. Wheeler, 108 Mo. 658, followed.*

4. ———: ———: DEFENDANT TESTIFYING.   Where the testimony of a defendant testifying in his own behalf is confined to some immaterial matters, it is not error for the court to omit to instruct the jury as to his competency and the weight to be given to his testimony.

5. ———: ———: OBJECTIONABLE REMARKS OF PROSECUTING ATTORNEY. Where in a prosecution for seduction of a female under eighteen years of age the prosecuting attorney in his argument to the jury stated that the return of the writs by the officers showed that the defendant ran away and skipped out and the prosecutrix had to work in a factory to support herself and child and the court rebuked him and directed him to confine his remarks to the record and the facts in proof, the judgment will not be reversed because of such remarks.

*Appeal from Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*Edmonston & Cullen* for appellant.

(1) The indictment is insufficient. It should allege the age of the girl and it or the record should read, "Sworn and charged to inquire into and for the body of Montgomery county." *State v. Brooks,* 94 Mo. 121; *State v. Freeman,* 21 Mo. 481; *State v.*

*Vincent*, 91 Mo. 665. (2) It was error to allow the witnesses, Appling, MacMahan and Bellamy to testify to the reputation of the prosecutrix. The state must by testimony show affirmatively that chastity continued down to the very day of seduction. *State v. Dietrick*, 51 Iowa, 467; *State v. Wells*, 48 Iowa, 671; *State v. Gates*, 6 N. W. Rep. 404; *State v. McCasky*, 104 Mo. 644; *Carpenter v. People*, 8 Barb. (N. Y.) 603; Bishop on Statutory Crimes [2 Ed.], sec. 639. (3) Evidence of defendant's conduct towards the girl before and after the seduction is admissible to determine whether consent was obtained by seductive arts. *State v. Curran*, 3 Am. Cr. Rep. 405; *Lewis v. People*, 37 Mich. 518; *People v. Gould*, 70 Mich. 240; *Callahan v. State*, 63 Ind. 198; *Wood v. State*, 48 Ga. 192. (4) Again, he was entitled to this testimony to show that there was no deceit, no broken promises, no misleading, in fact, no seduction. Deceit is the *gravamen* of the offense and where there is no deceit, no subtle means, no blandishments, nothing but a plain blunt offer of marriage, and that not accepted, not relied upon, but rejected and deferred, there is no seduction. *People v. Gould*, 70 Mich. 240; *State v. Horton*, 100 N. C. 443; *Bailey v. O'Bannon*, 28 Mo. App. 39; *State v. Reeves*, 97 Mo. 668; *Smith v. Milburn*, 17 Iowa, 31; *Baird v. Boehner*, 33 N. W. Rep. 694; *State v. Patterson*, 88 Mo. 94; Wharton on Criminal Law [9 Ed.], sec. 1758. (5) The court erred in its instruction defining "good repute." "Good repute" as used in our statute means the same as "previous chaste character" and before the jury can convict they must believe beyond a reasonable doubt that the woman is chaste, not of good reputation. *State v. Patterson*, 88 Mo. 88; *State v. Hill*, 91 Mo. 429; *State v. Wheeler*, 84 Mo. 253; *State v. Primm*, 98 Mo. 368. (6) The court should have instructed the jury that defend-

ant was a competent witness in his own behalf; that they were the judges of the credibility of the witnesses and the weight of the evidence; that no conviction could be had unless the prosecutrix was induced to consent by reason of a promise and a reliance upon it and they should disregard all statements made by the attorney Ball about the defendant's fleeing. It was the court's duty to instruct on all these points and all others in the case even though not requested. *State v. Palmer*, 88 Mo. 508, and *State v. Banks*, 73 Mo. 592. That there must be a reliance on the promise and that it must bear the relation of cause and effect to the seduction is settled law. *Carney v. State*, 79 Ala. 14; *Phillips v. State*, 108 Ind. 406; *State v. Eckler*, 106 Mo. 585.

*R. F. Walker*, Attorney General, for the state.

(1) The indictment is in the language of the statute and clearly charges the offense of which defendant was convicted. Revised Statutes, 1889, section 3486. (2) The remarks of attorney Ball were legitimate and authorized by the record. He had a right to draw his own conclusions, and suggest them to the jury. (3) The fact that defendant may have been willing to marry prosecutrix was not a matter of defense, and hence, no error was committed by the trial court in excluding his testimony, or in refusing the instructions asked by him. Revised Statutes, 1889, section 3486.

BURGESS, J.—The defendant was convicted in the circuit court of Montgomery county for seducing and debauching one Mattie Owens, an unmarried female of good repute and under eighteen years of age. The case is in this court on his appeal.

The facts developed by the testimony are, that during December, 1890, and January, 1891, defendant boarded at the home of the prosecutrix, at Danville, Montgomery county, Missouri; that defendant and the prosecutrix were engaged to be married. The prosecutrix testified that on December, 26, defendant asked her to have sexual intercourse with him. She replied, "it was not right;" when he said, "it wouldn't be no harm, we are engaged," and she then consented; that they had sexual intercourse twice during January, 1891, and each time they had about the same conversation; that the parents of the prosecutrix refused to permit defendant to come to the home of the prosecutrix, and refused to permit her to marry defendant; that defendant always expressed a willingness to marry her, and never refused. The mother of prosecutrix testified that she forbade her daughter marrying defendant, and ordered him not to come on the place again; that she told her daughter she had rather see her dead than marry defendant; that she and her husband offered to settle the case for less than $100. Letters written by defendant to prosecutrix were identified and read in evidence, in which defendant renewed his offer to marry her. The testimony gives the prosecutrix a good reputation for chastity and virtue.

The indictment is well enough and good under the section of the statute under which it was drawn, containing as it does all necessary averments. *State v. Eckler*, 106 Mo. 585; *State v. Primm*, 98 Mo. 368.

It is contended by counsel for defendant that the court committed error in allowing the witnesses, MacMahan and Bellamy, to testify to the reputation of the prosecutrix, because they were not qualified to do so. This contention is not sustained by the record, which discloses the fact that each one of these witnesses testified that he was acquainted with Mattie

Owens. One of them, Bellamy, that she went to school to him in 1890, and they both testified that they had never heard anything against her. In passing upon a similar question by this court, SHERWOOD, J., said: "That reputation may, with justice, well be called good which no slanderer has ever ventured to even so much as question. A blameless life oftentimes, though not always, gives origin to such a reputation. But when it can be said of a man by those well acquainted with him that they never heard his reputation, as to truth and morals, discussed, denied or doubted, it is equivalent to passing upon him the highest encomium. The authorities abundantly establish that the person testifying need not base his knowledge on what is 'generally said' of the person whose character is in question, but may base his knowledge of the reputation of such person on evidence of the negative nature above noted." *State v. Grate*, 68 Mo. 22, and authorities cited.

Defendant was introduced as a witness in his own behalf, and asked whether or not it was his honest intention to marry the prosecuting witness, if he had always held himself in readiness and willing to marry her, and if he was not then ready and willing to do so. These questions were all objected to by the state, the objections sustained, and the defendant duly excepted. It is urged with much earnestness that the court should have permitted these questions to be answered, as the answer thereto would have shown that defendant acted in good faith in promising to marry Mattie Owens, and was not guilty of any deception in promising to do so. It is the act of seducing and debauching which is the *gravamen* of the offense, and, if this is done by promises of marriage, the crime is complete, no matter what the defendant's intentions may have been, or what offers he may have made after the act was consum-

mated.    Section 3486, Revised Statutes, provides that, "If any person shall, under or by a promise of marriage, seduce and debauch any unmarried female of good repute, under eighteen years of age, he shall be deemed guilty of a felony;    *    *    *    but if, before judgment upon an indictment, the defendant marry the woman thus seduced, it shall be a bar to any other prosecution of the offense, but an offer to marry the female seduced by the party charged shall constitute no defense to such prosecution." While by the plain provisions of the statute marriage by the defendant of the female seduced before judgment is a bar to the prosecution, the mere offer to do so is not.

This position finds support in the case of *State v. Bierce*, 27 Conn. 319, where, under a statute like the Missouri statute, it is said:

"The proposition    *    *    *    that a virtuous and innocent female, who has been persuaded by a man to surrender her chasity to him by a *promise of marriage*, which is the strongest temptation that could be offered to prevail upon her to part with her innocence, and in which she implicitly confided, is not, although such promise was made honestly and with an intention to perform it, within the protection intended by the statute on which this information is founded, is, on the statement of it, so absurd that we deem it unnecessary formally to refute it.    Is it less a seduction that it was accomplished by the most powerful inducement which could be offered to his victim, or that such inducement consisted of a promise which was intended to be performed?"

Moreover the prosecuting witness testified that although the defendant always expressed a willingness to marry her, and never refused to do so, she never saw or heard of him after the fifth day of July, 1891, until after his arrest, when he wrote her.

The court, in defining "good repute," as used in the statute, adopted the same definition as did this court in the case of *State v. Wheeler*, 108 Mo. 658, which we are satisfied is correct, and according to the meaning as those words are used in the statute.

Another contention is that the court should have instructed the jury that defendant was a competent witness in his own behalf and the weight to be given to his testimony, although no such instruction was asked by him. A sufficient answer to this contention is that the only matters that defendant testified to were that as to his name, and that he had promised to marry the prosecuting witness. Certainly there was no error under such a state of facts in the failure of the court to instruct as to his competency, and the weight to be given to his testimony, as it was of no consequence or importance.

There was no error in refusing to give the instructions prayed for by defendant; the first and third embodied the good faith on the part of the defendant in promising to marry Mattie Owens, which was not the law as hereinbefore stated, while the second was substantially given in the other instructions given on the part of the state.

During the argument before the jury on the merits of the case, one of the attorneys for the state remarked, "that the return of the writs by the officers showed that the defendant run away or skipped out, and that the prosecuting witness had to work in a tobacco factory to support herself and child." Counsel for defendant objected to such remarks, and the court then stopped the attorney, rebuked him, and directed him to confine his remarks to the record and facts in proof. This is all that the court could do, and all that was required. We are justified in assuming that the rebuke of the court warned the jury to

disregard the statements.    *State v. Lee*, 66 Mo. 165; *State to use v. Finn*, 24 Mo. App. 344.

As there is no error in the record which will justify a reversal of the cause, the judgment will be affirmed, and it is so ordered.    All concur.