# THE STATE v. ROY MITCHELL, Appellant.

## Division Two, June 30, 1910.

1. **JURISDICTION: To Wrong Term: Appearance.** It is the duty of a justice of the peace to recognize a defendant, upon preliminary examination in a bailable offense, to appear on the first day of the next term of the circuit court of the county, to answer such charges as may be preferred against him. And where the Legislature, by an act which did not go into effect until August 16th, changed the October term to the third Monday in August, and on August 10th the justice recognized defendant to appear to the regular August term, and on August 10th the prosecuting attorney filed an information to the August term, there is no merit in the complaint that the circuit court had no jurisdiction to try defendant on said information. Nor is the point open for consideration, since defendant appeared at the August term, made no objection to the court's jurisdiction, pleaded, and announced ready for trial.

2. **DEFENDANT AS WITNESS: Cross-Examination: Different Dates: Seduction.** A defendant may be cross-examined as to any matter to which he referred in his examination in chief. Where he testified in reference to his promise to marry prosecutrix on the date laid in the information, and to having had sexual intercourse with her at that time, it was not improper for the State on cross-examination to ask him about his promise to marry her and concerning his intercourse with her on other dates.

3. **SEDUCTION: Promise to Marry: In Future: No Breach.** Where defendant had sexual intercourse with prosecutrix under a promise of marriage, it was seduction, though such promise was to marry her in the future, after he had finished his course in school, and that time had not arrived at the time of the intercourse. The statute means that a promise of marriage shall not be used as an aid in the seduction and debauchery of females of good repute under twenty-one years of age; and it is immaterial when the promise of marriage was to be consummated, if it was an inducing enticement of the defilement.

4. ——: **Instruction: Marriage in Future: Good Faith.** An instruction telling the jury that if defendant had sexual intercourse with prosecutrix because he promised to marry her after he got through school and because of her love for him, and if

the defendant in good faith made such promise and intends to carry out the argreement, he should be acquitted, should be refused. If the promise is made, defendant's guilt does not depend upon its breach, nor on the expiration of the time when the promise was to be consummated.

5. ———: ———: **Letters: Comment.** An instruction which undertakes to select certain portions of the evidence and to comment upon their force and effect, to-wit, the letters written by defendant to prosecutrix in the seduction case, should be refused.

6. ———: ———: **Confining Offense to Date Charged.** The instructions in a seduction case should not require the jury to find that the sexual intercourse took place on a particular date. If the defendant, under and by a promise of marriage, at any time within three years before the filing of the information, seduced and debauched prosecutrix, an unmarried female of good repute under twenty-one years of age, he is guilty.

7. ———: **Sufficient Evidence: Barter.** Illicit intercourse permitted by a woman as a mere barter and trade for a promise of marriage is not seduction; to constitute seduction there must be the exercise of certain influences upon the affections of the female by reason of the promise of marriage, and to some extent the bringing into play of certain arts and blandishments, reasonably sufficient, aided by the promise to marry, to cause her to yield to defendant's desires. And tested by this rule, the evidence in this case was sufficient to authorize a verdict of guilty.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*C. P. Johnson, Dalton & Arthur* for appellant.

(1) The defendant was forced by the court to testify to the very thing on which the jury convicted him. It was clearly error to rule that defendant must testify as to whether he ever, at any time, had sexual intercourse with the prosecutrix. A defendant in a criminal prosecution, who testifies in his own behalf, can be cross-examined only upon matters brought out in his examination in chief. R. S. 1899, sec. 2637; U. S.

Constitution, Fifth Amend. (2) The evidence does not show that defendant seduced the prosecutrix. (a) The testimony of the prosecuting witness is that she let the defendant have sexual intercourse with her because she loved him and because he promised to marry her when he completed a course in college, which would take him four years from the time they entered into the agreement. (b) In the case of State v. Reeves, 97 Mo. 668, the court held in substance that if the prosecuting witness submitted herself to the defendant upon the bare promise that he would marry her, the necessary elements of seduction are lacking and the defendant should not be convicted. (c) If the prosecutrix agreed with defendant that he might have sexual intercourse with her, provided he would agree to marry her at some future time, and defendant agreed that he would, and they had sexual intercourse under said promise, there is no seduction. State v. Meals, 184 Mo. 244. (d) The State must show that there was a promise to marry at the time the prosecuting witness consented to have intercourse with defendant. State v. Bassfield, 81 Mo. 151. (e) The sexual intercourse is an essential element of the seduction, and must always be proved beyond a reasonable doubt. It must be procured by an unconditional promise of marriage, and it must be solely because of the promise that the female is induced to surrender her virtue. Underhill on Crim. Ev., sec. 387, note 2; State v. Bassfield, 81 Mo. 151. (3) According to the testimony of the prosecuting witness, she and defendant entered into a contract to marry when defendant completed a course in college, which was understood and agreed, at the time, to take four years from the date she says the contract was made. Under the terms of the contract, as she states them, the defendant has about two years yet in which to complete his contract with the prosecutrix. Legally there should be no criminal prosecution until the breach of the contract is made. 2 Par-

sons on Contracts (6 Ed.), star p. 60; 2 Bishop, Crim. Law (4 Ed.), sec. 1164; People v. Alger, 1 Parker 333; Wild v. Harris, 7 C. B. 999.

*Elliott W. Major*, Attorney-General, and *John M. Dawson*, Assistant Attorney-General, for the State.

(1) There was an abundance of evidence to justify the verdict. Of the truth and weight of the evidence the jury were the sole judges. The jury were very lenient with the appellant in their verdict, as the whole case presented an aggravated state of facts tending to establish in the strongest degree the absolute guilt of appellant and also that appellant is devoid of that reputable character which citizenship demands, is a menace to society, and should have been punished to the fullest measure designated in the statute. State v. Cunningham, 154 Mo. 174; State v. Miller, 156 Mo. 76; State v. Avery, 113 Mo. 500; People v. Mullins, 83 Cal. 138; State v. McLaughlin, 149 Mo. 31. (2) The State had a right to ask defendant if he ever promised to marry prosecutrix. This promise of marriage was alluded to in his examination in chief. As defendant availed himself of the privilege of testifying in his own behalf, he could be cross-examined as other witnesses. Such was the ruling in State v. Clinton, 67 Mo. 380; State v. Cox, 67 Mo. 392; State v. Rugun, 68 Mo. 214; and State v. Testerman, 68 Mo. 408. (3) The fourth point in defendant's brief, that the evidence did not show that the appellant seduced the prosecutrix, cites the Reeves case, 97 Mo. 668. In that case the illicit intercourse was held to be a barter and trade for the promise to marry prosecutrix in the future. But in the case at bar, the seduction was an absolute betrayal of the girl by long and continued courtship, after promise of marriage, with and by constant wiles, arts and blandishments practiced upon the loving, confiding, and deceived girl under his false promise. State

v Sublett, 191 Mo. 163.  The letters introduced in evidence are very affectionate, revealing the estimation in which appellant made prosecutrix believe he held her.  Here we have a promise of marriage fully shown by evidence other than that of the prosecutrix, and the seduction shown absolutely.

FOX, J.—This cause is now pending before this court upon appeal by the defendant from a judgment of the circuit court of Dent county, Missouri, convicting him of the seduction of a female of good repute under the age of twenty-one years under a promise of marriage.

On the 10th day of August, 1909, the prosecuting attorney of Dent county filed with the clerk of the circuit court of said county, an information charging the defendant with unlawfully and feloniously seducing and debauching Arzetta Inman, an unmarried female of good  repute and under the age of twenty-one years, under promise of marriage.  At the regular August term, 1909, of the Dent Circuit Court, and on the 16th day of August, the defendant was duly arraigned and entered his plea of not guilty, and on the following day he was put upon his trial in said court before a jury duly impaneled and sworn to try the cause.  At said trial the State introduced evidence tending to prove that Arzetta Inman was an unmarried female, whose mother was deceased, and who resided with her father on a farm in Dent county, and that defendant resided a mile and a half from the prosecutrix; that defendant had been waiting upon Miss Inman from January, 1905, as her suitor, until in January 1909; that he was visiting the prosecutrix when not away attending school, most every Sunday, and sometimes at evenings during the week; that he continued waiting upon her constantly during said time, and that they became engaged to be married, and had contracted and agreed to marry each other; that they had been

going together at least two years when they decided to marry when defendant arrived at the age of twenty-one years.

Prosecutrix testified that the defendant continually told her that he loved her, and she admits that she loved him; that on July 28, 1908, defendant had intercourse with her, after many times begging, persuading and promising to marry her, as she says, "just persuading me into it;" that he told her they were to be married, and if she loved him well enough to wait for him, after he went to school, he didn't think she ought to care, as they intended to get married.

The prosecutrix testified that the defendant, by the exercise of arts and blandishments, persuaded her to have sexual intercourse with her, and that she cried about having given up to him after she went to bed that night, and told him about it when he came to see her the next time, and he wanted to again have sexual intercourse with her; that she loved defendant and thought he would do the right thing about it, and that he promised to marry her, and she thought he loved her, and that she had never had intercourse with any other man. The prosecutrix testified that defendant objected to her keeping company with any other young men during the full time of the courtship between the prosecutrix and defendant; that the prosecutrix, in the month of March, 1909, in conversation with defendant, asked him to keep his promise to marry her, and he said he didn't know, that he was going to school and that he could not marry the prosecutrix until after his course of four years' study in his school was completed, and advised her to go to a physician; that he could not give her medicine, as he would be subject to a term in the penitentiary if he did, and advised her to go Dr. Craig, a physician; that during the time the prosecutrix and the defendant became engaged defendant wrote the prosecutrix a great many letters, some of them being introduced in evidence; that during the courtship de-

fendant gave prosecutrix two rings, a manicure set, a bracelet and other presents. Upon this bracelet defendant had engraved his initials and those of the prosecutrix; that during said period they were constantly together, the defendant taking the prosecutrix to many places and gatherings, such as to church, picnics and encampments, and other public gatherings of that character in that neighborhood. The prosecutrix went to see Dr. Craig at the instance and request of defendant two or three different times. Defendant stated to prosecutrix many times that he would marry her and would always treat her right before and after he had sexual intercourse with her, and that after fondling and loving her she finally yielded to his solicitations.

Exhibits "A" to "P" inclusive, were letters written by defendant to the prosecutrix and signed with appellant's name. No objections were made to their introduction in evidence, and no exceptions saved thereto.

The State further introduced evidence tending to show that the prosecutrix and defendant were seen together at public places often, and that defendant was known in the neighborhood to be the "solid company" of prosecutrix; that the prosecutrix enjoyed a good reputation in the neighborhood in which she resided, for honesty and integrity, virtue and chastity and good behavior.

The letters introduced in evidence were identified as the handwriting of defendant and defendant admitted that some of the letters introduced were in his handwriting, and does not deny that the others were written by him.

The defendant introduced evidence tending to show that prosecutrix, about the 10th of December, 1908, went to a singing in the neighborhood at the schoolhouse, and that she, defendant's father, Bud Duckworth and others started from the schoolhouse

toward home, and were together for about a half mile. That when they arrived at defendant's home, Bud Duckworth permitted prosecutrix to ride behind him on his horse from defendant's home to the home of the prosecutrix, a distance of a mile and a half; that no other persons were traveling that way at that time; that the prosecutrix could have had other company from church as her brother was there. Duckworth was a school teacher in the neighborhood and this fact is shown as an impropriety on the part of the prosecutrix; that the brother of prosecutrix married defendant's sister, and lived in the same yard in which prosecutrix lived.

The defendant testified in his own behalf that he was present at the home of the prosecutrix on the night of the 28th of July, 1908, together with a few of the friends of prosecutrix; that the party broke up about 10:30, but denied that he had sexual intercourse with prosecutrix on the night of July 28, 1908; that he was attending school at the time of the trial and had three more years to complete his course: that he never "come out and promised prosecutrix that he would marry her," but admitted having sexual intercourse with her several times, but did not remember having had sexual intercourse with her on the night of July 28, 1908; he admitted that they were lovers and had been for four years, and that he called to see her often and that they were on friendly terms; that he had taken her to many entertainments and public places of amusement and entertainment. Defendant admitted that he loved prosecutrix some and had probably told her so; that he didn't know whether or not she believed him when he told her he loved her; admitted that he was at her home nearly every Sunday, but denied that he insisted on her not keeping company with other men; that he accompanied her to church and Sunday school and to entertainments, and that no one else accompanied her to such places when he was at home; that he

saw Edwin Duckworth with her at an ice cream social, and that he knew at one time that Enoch Floyd had kept company with her, but that he (defendant) accompanied prosecutrix from the ice cream social to her home; that he had invited prosecutrix to his father's home; that he came home from school on the 20th of December, 1908, and that evening called on the prosecutrix. Defendant stated that he had received a great many letters from prosecutrix, but that he had given them to his attorneys and did not know where they were; that every time he wrote the prosecutrix she answered it; defendant denied that he had ever promised to marry prosecutrix.

At the close of the evidence the court instructed the jury and the cause was submitted to them and they returned a verdict finding the defendant guilty as charged in the information and assessed his punishment at a fine of one thousand dollars and imprisonment in the county jail for one year. Timely motions for new trial and in arrest of judgment were filed and by the court overruled. Judgment was entered in conformity to the verdict and from this judgment defendant prosecuted this appeal and the record is now before us for consideration.

## OPINION.

### I.

The information upon which the judgment in this cause is predicated charges every essential element of the offense of which the defendant was convicted. It is in such form as has repeatedly met the approval of this court. [State v. O'Keefe, 141 Mo. 271; State v. Eckler, 106 Mo. 585; State v. Brandenburg, 118 Mo. 181.]

There is no merit in the insistence of appellant that the circuit court of Dent county had no jurisdiction to try the defendant upon the information as filed by

the prosecuting attorney, upon the ground that the justice of the peace in the preliminary examination on the 10th day of August, 1909, recognized the defendant to appear at the August term of the Dent Circuit Court, and the additional reason that the prosecuting attorney filed the information in this cause against the defendant on the 10th day of August, 1909. The Legislature of 1909 (Laws 1909, p. 411) made a change in the time for the regular terms of the Dent County Circuit Court. One of the changes made was that instead of the October term, 1909, the regular term was changed to the third Monday in August. This act making the change did not go into effect and become operative until August 16, 1909. Upon this state of the record learned counsel for appellant insists that, for the reason that the justice of the peace held the preliminary examination prior to the time when the Act of 1909 changing the time of holding the court went into effect, he should have recognized the defendant to appear at the October term, and for the additional reason that the prosecuting attorney on the 10th day of August, 1909, prior to the taking effect of the act which changed the term of Dent County Circuit Court to the third Monday in August, filed the information in the circuit court of Dent county, Missouri, to the August term, 1909; that this deprived the circuit court of Dent county of jurisdiction to try said cause upon the information filed. It is sufficient to repeat that there is no merit in this insistence. Under the Laws of 1905, page 133, it was made the duty of justices of the peace to recognize defendants upon preliminary examinations in all bailable offenses for their appearance on the first day of the next regular term of the circuit court of such county to answer such charges as may be preferred against them. The information was filed by the prosecuting attorney in the proper office—in the office of the circuit clerk—and the mere fact that he said "to the August term, 1909," falls far short of in any way vitiating

the sufficiency of the information. But aside from all this, the defendant in this cause appeared in person and by counsel, made no objection to the jurisdiction of the court, announced ready for trial, which, in our opinion, was a complete waiver of jurisdiction over the person. There can be no question but what the court had jurisdiction over the subject-matter. We take it that, as before stated, there is no merit in the complaint that the circuit court of Dent county, by reason of the facts herein indicated, did not have jurisdiction both of the subject-matter and of the defendant.

## II.

It is earnestly insisted by learned counsel for appellant that the prosecuting attorney was permitted to cross-examine the defendant upon matters not referred to in his examination in chief. This proposition required an examination of the disclosures of the record. We have analyzed in detail the record upon this proposition and find that the cross-examination of the defendant upon the questions of his promise of marriage to the prosecuting witness and sexual intercourse with her, was entirely proper. Both of those subjects were referred to in his examination in chief, and the mere fact that he made reference to those subjects upon a particular date, by no means precludes the State from full and thorough cross-examination of the defendant upon the subjects referred to in his examination in chief.

Upon this proposition counsel for appellant direct our attention to the cases of State v. McGraw, 74 Mo. l. c. 574; State v. Porter, 75 Mo. l. c. 177; State v. James and Johnson, 216 Mo. 394, in support of the contention that the cross-examination of the defendant while a witness upon the stand constitutes reversible error. An examination of those cases will demonstrate that they are entirely unlike the case at bar. In those cases the prosecuting attorney was permitted to cross-

examine the defendants upon subjects to which no reference had been made in their examinations in chief. In the case at bar the record, which we have examined in detail, clearly discloses that the defendant in his examination in chief made reference to the subjects of promise of marrying and sexual intercourse with the prosecuting witness, and as before stated, while it is true he undertook to confine his answers to a particular date, yet, under the well-settled rules of law upon this subject he cannot be permitted by such answers to confine his cross-examination to the narrow channel insisted upon in this case. The rule upon this subject was very appropriately and clearly stated in State v. Miller, 190 Mo. l. c. 463, where it was said: "When the statute says, 'A defendant may be cross-examined *as to any matter referred to in his examination in chief* and may be contradicted and impeached as any other witness in the case,' it does not mean that a defendant can take the stand and in answer to one or two well-prepared interrogatories sweep away the whole structure of the State's case and then remain immune from a cross-examination on the issue thus tendered. Cross-examination from time immemorial has been the great test of the credibility of any witness. The defendant under our laws need not become a witness, and when he does he enjoys an advantage over the ordinary witness in that his cross-examination must be confined to the matter with reference to which he testifies, but as to the matter to which he 'refers' in his testimony in chief he is subject to cross-examination and impeachment just as any other witness."

In State v. Avery, 113 Mo. l. c. 500, it was very tersely and correctly stated that "cross-examination as used in the statute does not mean a mere categorical review of the matters stated by defendant."

Applying the well-recognized rule applicable to the subject of the cross-examination of a defendant,

we are of the opinion that there was no error in the cross-examination indulged in in the case at bar.

It is sufficient to say as to the other cases cited by appellant that we have examined them and find that they have no application to the subject as disclosed by the record in the case at bar, and fall far short of supporting the contention that the cross-examination of the defendant in this case was in any manner improper or erroneous.

## III.

It is insisted in the brief of learned counsel for appellant that the trial court committed error in permitting witness Duckworth to testify as to the handwriting of the defendant in the letters offered by the State, purporting to be letters written by the defendant. It is sufficient to say upon that proposition that we have examined the record as applicable to the testimony of witness Duckworth, and our conclusion is that there was no reversible error in permitting him to express his opinion as to the handwriting in these letters. But aside from all this, the defendant himself, upon examination by his own counsel, admitted the writing of at least some of the letters, if not all of them, which were introduced in evidence, hence our conclusion is that there is no merit in the objection to the admission of the letters offered by the State in evidence.

## IV.

It is next insisted that the promise or contract of marriage between the defendant and the prosecuting witness consisted of an agreement to marry in the future, that is, after the defendant had finished a course of study in some school, and that there could be no violation of the criminal statute until after a breach of the contract of marriage. In other words, it seems that counsel for appellant insist that there must not only be a promise of marriage, but that there must be a

failure to comply with such promise, before there can
be a prosecution under the provisions of section 1844,
Revised Statutes 1899. We are unable to give our as-
sent to this insistence. The provisions of this statute
clearly had in view the protection of unmarried females·
of good repute under the age of twenty-one years from
designing persons who might seek to seduce or debauch
them under or by a promise of marriage. In other
words, this statute simply says to the male, "You shall
not under or by any promise of marriage accomplish
the seduction or debauchery of an unmarried female
of good repute under the age of twenty-one years, and
if you seduce or debauch under the promise of mar-
riage any unmarried female under twenty-one
years of age you shall be deemed guilty of a felony."
This statute does not contemplate that there shall be
a promise or contract of marriage at a particular or
definite time, and if a person seduces or debauches a
female prior to the time that the contract of marriage
is to be consummated he would not be guilty of any
offense. This statute simply means that the promise
of marriage shall not be used as an aid in accomplish-
ing the seduction and debauchery of females of good
repute under the age of twenty-one years. If this de-
fendant promised to marry the prosecuting witness at
any time in the future and under or by such promise
of marriage he seduced or debauched her then it makes
no difference whether the time the marriage was to
be consummated had expired or not—this constitutes
no defense to this prosecution.

## V.

This brings us to the consideration of the instruc-
tions. We do not deem it necessary to reproduce the
instructions as given by the court, but it is sufficient to
say that we have carefully examined the instructions
given on the part of the State, as well as those given
for the defendant, and in our opinion they fully covered

every phase of the case to which the testimony was applicable. As to the instructions requested by the defendant and refused by the court, in our opinion the action of the court in refusing such instructions was entirely proper.

Instruction number 15 sought to have the court declare the law that if the defendant had sexual intercourse with the prosecuting witness because he promised to marry her after he got through school and because of her love for him, and the defendant in good faith made such promise and intends to carry out this agreement, then the jury must acquit the defendant. This is clearly not the law in this State, and was properly refused. The offense as defined by the statute consists in the seducing and debauching of a female of good repute under the age of twenty-one years under or by a promise of marriage, and the offense is complete when the promise of marriage is made and under or by the promise the seduction is accomplished, and does not depend upon the expiration of the time when the marriage was to be carried into effect. What has heretofore been said as applicable to that proposition is equally applicable to instruction 15.

Instruction numbered 16 was properly refused for the reason that it undertakes to select certain portions of the evidence, that is to say, the letters written by the defendant, and comment upon the force and effect of such testimony.

Instruction numbered 17 simply in different phraseology presented the same legal propositions as are embraced in instruction numbered 15.

Instructions numbered 18 and 19 were fully covered by the instructions given by the court.

Instruction numbered 20 directed the jury that it was essential in order to authorize a conviction of defendant that the sexual intercourse with the prosecuting witness had to be indulged on a particular date, that is, the 28th day of July, 1908. This manifestly

is not the law  If the defendant, under and by a promise of marriage, at any time within three years before the filing of the information seduced and debauched the prosecuting witness, an unmarried female of good repute and under the age of twenty-one years, then the jury would be authorized in finding him guilty.

## VI.

Finally it is insisted by counsel for appellant that the evidence developed upon the trial of this cause is insufficient to support the verdict.  In other words, it is confidently asserted that the testimony fails to show that there was a seduction of the prosecuting witness within the purview of the statute upon which the information is based.  Upon this proposition we are cited to the Reeves case, 97 Mo. 668, and to numerous other cases, among which is State v. Meals, 184 Mo. 244.  It is well settled by the adjudications in this State that if the illicit intercourse was permitted by the prosecuting witness as a mere barter and trade for the promise of marriage, that this is not seduction under the provisions of the statute, but that in order to constitute the offense of seduction under promise of marriage as defined by the statute there must be the exercise of certain influences upon the affections of the female by reason of the promise of marriage, and there must be to some extent the bringing into play of certain arts and blandishments directed to her, reasonably sufficient, aided by the promise of marriage, to have her yield to his desires.  We have examined carefully all the evidence as disclosed by the record—have read it in detail, and in our opinion it fully supports the conclusions reached by the jury that the defendant seduced the prosecuting witness under a promise of marriage.  In fact, upon reading the entire testimony we see no escape from the conclusion that the jury could not have reasonably returned any other verdict than that of guilty.  The promise of marriage as testified to by the

prosecuting witness is fully corroborated, not only by the letters introduced in evidence written by the defendant, but as well by the evidence of other witnesses as to their associations with each other.

As to any conflict in the testimony of the witnesses for the State and the defendant it is sufficient to say that it was the province of the jury to settle such conflict. It is firmly settled in the jurisprudence of this State that the appellate court, where there is substantial testimony supporting the verdict as returned by the jury, will not disturb such finding on the ground that there may be some conflict in the testimony from which the final conclusions of the jury were reached.

We have indicated our views upon the leading and controlling propositions as disclosed by the record, which results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered. All concur.